**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

| | |
|---|---|
| **MARTIN LYNCH**, as Personal Representative of the **ESTATE OF LYNN ARDEN GRAHAM-LYNCH**; **KYLE QUEAHPAMA** as heir of the **ESTATE OF ROBERTA QUEAHPAMA**; **TWO J'S DEVELOPMENT COMPANY, LLC**, c/o **SANDRA VAHALA** and **JOSHUA VAHALA**; **WALTER JAQUITH**; and **CAROLYN JAQUITH**, on behalf of themselves and all others similarly situated, | Case Nos. 3:23-cv-01502-IM; 3:23-cv-01971-IM; 1:23-cv-01434-IM **CONSOLIDATED OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS; GRANTING PLAINTIFFS' MOTION TO AMEND COMPLAINT IN *LYNCH*; DENYING THE MOTIONS TO INTERVENE; AND DENYING MOTION TO CONSOLIDATE** |
| Plaintiffs, | |
| v. | |
| **MULTNOMAH COUNTY**, on behalf of itself and all others similarly situated; **LANE COUNTY**, on behalf of itself and all others similarly situated; **YAMHILL COUNTY**, on behalf of itself and all others similarly situated, | |
| Defendants. | |
| *consolidated with* | |

PAGE 1 – OPINION AND ORDER ON MOTIONS TO DISMISS

**JEFFREY SAWYER**; and **BALTAZAR ORTIZ**, on behalf of themselves and all others similarly situated,

        Plaintiffs,

  v.

**MARION COUNTY**, on behalf of itself and all others similarly situated; and **CLACKAMAS COUNTY**, on behalf of itself and all others similarly situated,

        Defendants.

*consolidated with, for a limited purpose,*

**MATTHEW GABBERT**; **KELLY GABBERT**; **DAVID ARNDT**; **BARBARA NEWKIRK**; **MICHAEL NEWKIRK**; **MICHAEL LANGSHAW**; **DALLIS BOWMAN**; **MELODY GIBSON**; **MICHELLE WEND**; and **JULIE RETTIG**, on behalf of themselves and all others similarly situated; **JAMES GATCHET**; **WILLIAM LICHATOWICH**; **SANDRA HEDGES**; and **RICHARD SMITH**,

        Plaintiffs,

  v.

**JOSEPHINE COUNTY**; **MARION COUNTY**; **JACKSON COUNTY**; **COLUMBIA COUNTY**; and **KLAMATH COUNTY**,

        Defendants.

David F. Sugerman and Nadia H. Dahab, Sugerman Dahab, 101 SW Main Street, Suite 910, Portland, OR 97204. Elias Kohn, Joseph C. Kohn, and Zahra Dean, Kohn, Swift & Graf, P.C., 1600 Market Street, Suite 2500, Philadelphia, PA 19103. Elizabeth F. Quinby, Gregory Paul Hansel, and Michael D. Hanify, Preti Flaherty Beliveau & Pachios, LLP, One City Center, PO Box 9546, Portland, ME 04112-9546. Kat J. Mail, Preti Flaherty Beliveau & Pachios, PLLP, PO Box 1318, 57 North Main Street, Concord, NH 03302-1318. Shana Solomon, Preti Flaherty, 60

State Street, Suite 1100, Boston, MA 02109. Nathan J. Fink, Fink Bressack PLLC, 38500 Woodward Avenue, Suite 350, Bloomfield Hills, MI 48304. Attorneys for Plaintiffs in 3:23-cv-01502-IM and 3:23-cv-01971-IM.

Michael Zhang, Qiu-qiu Law, 5020 NE Martin Luther King Jr. Blvd, Suite S, Portland, OR 97211. Akeeb Dami Animashaun, Akeeb Dami Animashaun, Esq., 355 South Grand Avenue, Suite 2450, Los Angeles, CA 90071. Shakeer Rahman, Law Office of Shakeer Rahman, 838 East 6th Street, Los Angeles, CA, 90021. Attorneys for Plaintiffs in 1:23-cv-01434-IM.

Andrew T. Weiner, Carlos A. Rasch, and B. Andrew Jones, Multnomah County Attorney's Office, 501 SE Hawthorne Blvd, Suite 500, Portland, OR 97214. Attorneys for Defendant Multnomah County.

Emily D Vario, Lane County Office of County Counsel, 125 E. 8th Avenue, Eugene, OR 97401. Thomas M. Christ, Sussman Shank, LLP, 1000 SW Broadway, Suite 1400, Portland, OR 97205. Attorneys for Defendant Lane County.

Christian F. Boenisch, Yamhill County, Office of County Counsel, 434 NE Evans Street, McMinnville, OR 97128. Kyle A. Sturm, Foreman Sturm & Thede LLP, 3519 NE 15th Avenue, #489, Portland, OR 97212. Attorneys for Defendant Yamhill County.

Stephen Lewis Madkour and Sarah D. Foreman, Clackamas County Counsel, 2051 Kaen Road, Oregon City, OR 97045. Attorneys for Defendant Clackamas County.

Thomas M. Christ, Sussman Shank, LLP, 1000 SW Broadway, Suite 1400, Portland, OR 97205. William S. T. Wood, Schwabe Williamson & Wyatt, 1211 SW Fifth Avenue, Suite 1900, Portland, OR 97204. Attorneys for Defendants Josephine County, Marion County, Jackson County, Klamath County, and Columbia County.

**IMMERGUT, District Judge.**

Before this Court are three motions to dismiss, a motion requesting leave to amend a complaint, motions to intervene, and a motion to consolidate.[1] Plaintiffs in *Lynch*, *Sawyer*, and *Gabbert* are former tax delinquent property owners alleging that the Defendants, Oregon Counties, violated the United States and Oregon constitutions by retaining a surplus in their foreclosed properties worth more than the amount of tax debt owed. Defendants across the three

---

[1] This Court has consolidated for purposes of resolving the instant motions the already-consolidated cases, Nos. 3:23-cv-01502-IM ("*Lynch*") and 3:23-cv-01971-IM ("*Sawyer*"), and the associated case, No. 1:23-cv-01434-IM ("*Gabbert*"). *Lynch*, ECF 89.

cases move to dismiss all of Plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(6).[2] The primary issues presented in the motions to dismiss are: (1) whether Plaintiffs alleged viable takings and excessive fines claims under the United States Constitution following the Supreme Court's recent holding in *Tyler v. Hennepin County*, 143 S. Ct. 1369 (2023); (2) whether their federal claims are barred by collateral estoppel and res judicata, or are otherwise untimely; and (3) whether Plaintiffs stated viable and timely state claims under the Oregon constitution.

This Court holds that Plaintiffs have alleged viable takings and excessive fines claims under federal law and viable takings claims under Oregon law, and these claims are not barred by collateral estoppel or res judicata. As to the timeliness of these claims, this Court holds that (1) the takings claims and excessive fines claims accrued on the expiration of the two-year Oregon statutory redemption period for foreclosed properties because that is when the property owners' rights to their properties were completely extinguished under O.R.S. 312.200; and (2) the statute of limitations is two years for federal claims and six years for state claims. Applying these principles, certain Plaintiffs' claims were filed beyond the statute of limitations and are therefore untimely. Further, equitable tolling of the statute of limitations is not appropriate because *Lynch* Plaintiffs fail to allege they were pursuing their rights diligently, and a change of the law is not an adequate basis for equitable tolling. This Court will exercise supplemental jurisdiction over remaining state claims. Accordingly, as detailed below, the

---

[2] *Lynch*, Defendant Lane County's Motion to Dismiss ("Lane County's MTD"), ECF 54; *Lynch*, Defendant Marion County's Motion to Dismiss ("Marion County's MTD"), ECF 67; *Lynch*, Defendant Clackamas County's Joinder in Def. Marion County's MTD, ECF 68; *Lynch*, Defendant Yamhill County's Joinder in Def. Marion County's MTD, ECF 70; *Gabbert*, Defendants' Motion to Dismiss ("Defs.' MTD"), ECF 31. This Court held a hearing on Defendants' motions on October 23, 2024. ECF 116. *Lynch*, ECF 116; *Sawyer*, ECF 81; *Gabbert*, ECF 70.

Motions to Dismiss are GRANTED in part and DENIED in part, and Plaintiffs' declaratory judgment claims are DISMISSED as moot.

As to the other motions, the *Lynch* Plaintiffs' motion for leave to amend their complaint is GRANTED because their proposed amendments will streamline the litigation and will not prejudice Defendants. The Oregon counties' motions to intervene are DENIED because the proposed intervenors have not shown that the existing parties may not adequately represent their interests. Defendants' motion to consolidate the *Gabbert* case with *Lynch* and *Sawyer* is DENIED due to potential delay and prejudice to the *Gabbert* Plaintiffs.

## LEGAL STANDARDS

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs.*, *Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

# BACKGROUND

Plaintiffs in these cases are former property owners or heirs to estates who failed to pay property taxes. In accordance with Oregon law, their properties were foreclosed and later sold, except for one Plaintiff whose property the County has retained. The proceeds from the property sales allegedly exceeded the tax obligations, and the Defendant Counties retained the surpluses. Plaintiffs challenge the Defendant Counties' retention of those proceeds, claiming that it is an unconstitutional taking in under the Takings Clause of the Fifth Amendment to the United States Constitution and an imposition of excessive fines in violation of the Eighth Amendment to the United States Constitution. Plaintiffs also allege it is an unconstitutional taking under Article I, Section 18 of the Oregon Constitution. Last term, the Supreme Court held in *Tyler v. Hennepin County*, 143 S. Ct. 1369 (2023) that a county's retention of surplus proceeds following a foreclosure sale constituted a classic taking in violation of the Fifth Amendment. Following the Supreme Court's ruling in that case, three sets of Plaintiffs filed these putative class actions against three sets of Defendants.

## A. *Gabbert*

*Gabbert* was filed on October 3, 2023, and is the first of the three cases. Complaint, ECF 1. Ten of the Plaintiffs in *Gabbert* bring claims in their individual and representative capacities, and four of the Plaintiffs bring claims only in their individual capacities, against Defendants Josephine County, Marion County, Jackson County, Klamath County, and Columbia County. First Amended Complaint ("*Gabbert* FAC"), ECF 7 ¶¶ 10–12. Plaintiffs bring three claims against the Defendant Counties: (1) a taking in violation of the Fifth Amendment to the U.S. Constitution, brought under 42 U.S.C. § 1983, *id.* ¶¶ 76–81; (2) a taking in violation of the Fourteenth Amendment to the U.S. Constitution, brought under § 1983; and (3) a taking in violation of Article I, § 18 of the Oregon Constitution, *id.* ¶¶ 82–86.

Plaintiffs Matthew and Kelly Gabbert allege that they owed $1,514.25 in taxes[3] on their property ("Gabbert Property"), and that Josephine County foreclosed on this property in March 2021 and sold it in December 2021 for $97,700. *Id.* ¶¶ 19–20.

Plaintiff David Arndt alleges that he owed $13,513.43 in taxes on his property ("Arndt Property"), and that Marion County foreclosed on this property in 2019 and sold it in April 2022 for $352,000. *Id.* ¶¶ 27–28.

Plaintiffs James Gatchet, William Lichatowich, Sandra Hedges, and Richard Smith allege that they owed $5,734.75 in taxes on their property ("Gatchet Property"), and that Marion County seized this property in 2018 and sold it in April 2022 for $245,000. *Id.* ¶¶ 29–30.

Plaintiffs Michael and Barbara Newkirk allege that they owed $3,484.62 in taxes on their property ("Newkirk Property"), and that Jackson County foreclosed on this property in 2019 and sold it in July 2023 for $75,000. *Id.* ¶¶ 36–37.

Plaintiffs allege that Debra Wend owed $6,980.76 in taxes on her property ("Wend Property"), and that Columbia County foreclosed on this property in 2019 and sold it in December 2022 for $65,246. *Id.* ¶¶ 42–43. Plaintiffs Melody Gibson and Michelle Wend inherited Debra Wend's estate. *Id.* ¶ 42.

Plaintiffs Michael Langshaw and Dallis Bowman allege that they owed $1,514.25 in taxes on their property ("Langshaw Property"), and that Columbia County seized this property in 2020 and sold it in May 2023 for $103,326. *Id.* ¶¶ 44–45.

---

[3] For the purposes of this Opinion, the word "taxes" includes taxes and the associated fees and penalties.

Plaintiff Julie Rettig alleges that she owed $289.93 in taxes on her property ("Rettig Property"), and that Klamath County foreclosed on this property in 2019 and sold it in August 2022 for $5,500. *Id.* ¶¶ 50–51.

*Gabbert* Plaintiffs allege that Defendant Counties retained all surplus proceeds from these sales. *Id.* ¶¶ 79, 84.

## B. *Lynch*

*Lynch* was filed on October 12, 2023, soon after *Gabbert*. Complaint, ECF 1. The five *Lynch* Plaintiffs[4] bring claims against Defendants Multnomah County, Lane County, and Yamhill County. First Amended Complaint ("*Lynch* FAC"), ECF 37; Notice of Dismissal, ECF 64. *Lynch* Plaintiffs allege both a putative plaintiff class and defendant class. FAC, ECF 37 ¶¶ 95–110. Plaintiffs bring four claims against the Defendant Counties: (1) declaratory judgment that O.R.S. 275.275, a statute proscribing the distribution of proceeds from lands acquired through foreclosure of tax liens, violates the Fifth, Eighth, and Fourteenth Amendments to the U.S. Constitution, *id.* ¶¶ 111–16; (2) a taking in violation of the Fifth Amendment to the U.S. Constitution, brought under 42 U.S.C. § 1983, *id.* ¶¶ 117–36; (3) a taking in violation of Article I, § 18 of the Oregon Constitution, *id.* ¶¶ 137–43; and (4) an imposition of excessive fines in violation of the Eighth Amendment to the U.S. Constitution, brought under § 1983, *id.* ¶¶ 144–49.

Plaintiff Martin Lynch alleges that his deceased wife owed approximately $31,660.57 in taxes on her property, and that Lane County foreclosed on and then sold the property on or

---

[4] Plaintiff Nancy Bender's claims against Defendant Multnomah County have been resolved. *Lynch*, ECF 34 & 38.

around March 31, 2020, for approximately $118,500. *Id.* ¶¶ 6–7, 13–14. Plaintiff Martin Lynch alleges that he is personal representative of his deceased wife's estate. *Id.* ¶ 6.

Plaintiff Two J's, LLC, alleges that it owed approximately $4,700 in taxes on several properties, and that Lane County foreclosed on and sold the properties in 2017 for approximately $20,000. *Id.* ¶¶ 22–23.

Plaintiff Kyle Queahpama alleges that his parents owed approximately $25,362.56 in taxes on this property, and that Multnomah County foreclosed on this property in March 2020 and sold it in October 2020 for $173,300. *Id.* ¶¶ 27–28, 33–35. Plaintiff Queahpama alleges that he is the heir to his mother's estate. *Id.* ¶ 27.

Plaintiffs Walter and Carolyn Jaquith[5] allege that they owed approximately $11,138.28 in taxes, and that Yamhill County foreclosed on and sold the property in 2019 for approximately $19,699.73. *Id.* ¶¶ 45, 7–48.

*Lynch* Plaintiffs allege that Defendant Counties retained all surplus proceeds from these sales. *Id.* ¶¶ 16, 25, 37, 44, 48.

## C. *Sawyer*

*Sawyer* was filed on December 28, 2023. Complaint ("*Sawyer* Compl."), ECF 1. The two *Sawyer* Plaintiffs bring claims against Defendants Marion County and Clackamas County. *Id.* ¶ 1; Notice of Dismissal, ECF 26. Like the *Lynch* Plaintiffs, the *Sawyer* Plaintiffs allege both a putative plaintiff class and defendant class. Compl., ECF 1 ¶¶ 55–73. The *Sawyer* Plaintiffs bring four claims: (1) declaratory judgment that O.R.S. 275.275 violates the Fifth, Eighth, and Fourteenth Amendments to the U.S. Constitution, *id.* ¶¶ 74–78; (2) a taking in violation of the

---

[5] The FAC refers to these Plaintiffs as both "Jaquist,"and "Jaquith." ECF 37 ¶¶ 1, 45–49. For the purposes of this Opinion, this Court uses "Jaquith." Any amended complaint must clarify the correct spelling.

Fifth Amendment to the U.S. Constitution, brought under 42 U.S.C. § 1983, *id.* ¶¶ 79–96; (3) a

taking in violation of Article I, § 18 of the Oregon Constitution, *id.* ¶¶ 97–102; and (4) an

imposition of excessive fines in violation of the Eighth Amendment to the U.S. Constitution,

brought under § 1983, *id.* ¶¶ 103–10.

Plaintiff Jeffrey Sawyer alleges that he owed around $31,000 in taxes on his property,

and Marion County foreclosed on this property in 2014. *Id.* ¶¶ 8, 10. He alleges that Marion

County sold the property on or around October 11, 2023, for approximately $405,000. *Id.* ¶ 12.

Plaintiff Baltazar Ortiz alleges that Clackamas County foreclosed on his property without

providing him adequate notice of the foreclosure and his ability to redeem the property. *Id.* ¶¶ 15,

17. Plaintiff Ortiz alleges that rather than sell the property after the redemption period ended in

2019, Clackamas County has kept the property, and that the value of the property exceeds the

amount of taxes owed. *Id.* ¶¶ 17–18.

### D. Oregon State Laws

Oregon law provides counties the authority and process for foreclosing on properties if

property owners fail to pay property taxes. *See* O.R.S. Vol. 8, Title 29, Ch. 312. This includes the

counties' authority to recover and distribute proceeds from foreclosures. O.R.S. 275.090.

Plaintiffs challenge O.R.S. 275.275, which sets out the process of how those proceeds can be

distributed.

After a property has been foreclosed, it is "held by the county for the period of two years

from . . . foreclosure, unless sooner redeemed." O.R.S. 312.120(1). Property owners can

"redeem" their property by paying "the full amount applicable to the property under the

judgment," plus interest and a penalty. O.R.S. 312.120(2). The property owner has the right to

possess the property during this redemption period. O.R.S. 312.180.

Properties not redeemed within the two-year redemption period "will be deeded to the county immediately upon the expiration of the period of redemption." O.R.S. 312.125(2)(c); O.R.S. 312.120. At this stage, "every right or interest of any person in the property [is] forfeited forever to the county." O.R.S. 312.125(2)(c).

## E. Amicus Brief

The State of Oregon, through Attorney General Ellen F. Rosenblum, filed an amicus brief addressing the constitutionality of O.R.S. 275.275. *Lynch*, ECF 80. The Attorney General states that, in light of the Supreme Court's decision in *Tyler*, "counties cannot constitutionally retain surplus proceeds from foreclosure sales without allowing the owner a process to claim those funds." *Id.* at 3. The Attorney General further states that O.R.S. 275.275 "itself does not set forth a procedure for the prior owner to claim funds in excess of those required to reimburse the county for taxes, fees, and costs associated with the foreclosure." *Id.* at 4. To "address[] that shortcoming," the Oregon legislature enacted Oregon Laws 2024, chapter 77 (House Bill 4056), which went into effect on June 6, 2024. *Id.* at 4–5; H.B. 4056, 82nd Leg. Assemb., Reg. Sess. (Or. 2024) ("H.B. 4056"). The Bill directs counties to establish a process for determining the right to surplus, H.B. 4056 § 2(1), and directs the Oregon Department of Revenue to coordinate with counties to comply with the *Tyler* decision. *Id.* § 3.[6]

## F. Consolidation

This Court previously consolidated for all purposes the two bilateral class actions, *Lynch* and *Sawyer*, finding that consolidation served the interests of judicial economy and consistency

---

[6] On September 15, 2024, in accordance with H.B. 4056 § 3(2), the Oregon Department of Revenue submitted its report including recommendations on a process for determining surplus and distribution of proceeds of property lien foreclosures in compliance with *Tyler*. Leg. Rep., 82nd Sess., HB 4056 Report (Or. 2024), https://perma.cc/72FL-3DDC (archived Oct. 23, 2024).

in judgments. *Lynch*, ECF 65. *Lynch* was designated the lead case. *Id.* The remaining case, *Gabbert*, was reassigned to this Court on May 2, 2024. *Gabbert*, ECF 54. At the May 8, 2024, status conference, this Court consolidated all three cases for the purpose of resolving the various motions to dismiss. *Lynch*, ECF 89. This Opinion addresses the briefing filed across all three cases.

## DISCUSSION

This Court first addresses Defendants' arguments in support of their motions to dismiss, including the viability and timeliness of Plaintiffs' federal and state claims. It then addresses the other outstanding motions.

### A. Federal Claims

Plaintiffs across all three cases bring § 1983 claims asserting violations of the Takings Clause of the Fifth Amendment, incorporated against the states under the Fourteenth Amendments, *Chicago, B. & Q.R. Co. v. City of Chicago*, 166 U.S. 226 (1897). Plaintiffs allege that the Defendant Counties' failure to return surplus from sales of foreclosed properties, or ongoing retention and use of properties without providing just compensation, amounts to an unconstitutional taking. Plaintiffs in *Lynch* and *Sawyer* also bring § 1983 claims under the Eighth Amendment's prohibition against excessive fines, as well as facial challenges to O.R.S. 275.275.

This Court first addresses Plaintiffs' declaratory judgment claims. Then, this Court assesses whether Plaintiffs have stated their Fifth and Eighth Amendment claims. Next, this Court evaluates the applicability of collateral estoppel and res judicata. Finally, this Court determines whether Plaintiffs' federal claims are timely.

### 1. Facial Challenges to O.R.S. 275.275 Are Moot

Plaintiffs allege that O.R.S. 275.275, on its face or as applied, violates the Fifth, Eighth, and Fourteenth Amendments to the U.S. Constitution because it does not provide any right or

process for property owners to reclaim any surplus. *Lynch* FAC, ECF 37 ¶¶ 113–14. Defendants respond that both Plaintiffs' facial and as-applied challenges are time-barred. *Lynch*, Lane County's MTD, ECF 54 at 13–16. This Court finds that facial challenges to O.R.S. 275.275 are moot.

Because mootness is a jurisdictional issue, courts are obligated to raise it sua sponte. *Gator.com Corp. v. L.L. Bean, Inc*., 398 F.3d 1125, 1129 (9th Cir. 2005). "A case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000) (cleaned up) (quoting *Cnty. of L.A. v. Davis*, 440 U.S. 625, 631 (1979)). In such cases, "any opinion as to the legality of the challenged action would be advisory." *Id.* When a legislative body repeals or amends a challenged legislative provision, courts "should presume that the repeal, amendment, or expiration of legislation will render an action challenging the legislation moot, unless there is a reasonable expectation that the legislative body will reenact the challenged provision or one similar to it." *Bd. of Trs. of Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195, 1199 (9th Cir. 2019) (en banc).

As discussed above, Oregon House Bill 4056 requires counties to establish a process for handling surplus proceeds from property tax lien foreclosure sales. H.B. 4056 § 3(1); *see also* Or. Legis. Rep., No. 82, H.B. 4056, at 4 (Sept. 2024) ("House Bill 4056 was approved during Oregon's 2024 legislative session in response to Tyler vs. Hennepin."). This statutory amendment moots Plaintiffs' facial challenges to O.R.S. 275.275 since they are based on insufficient process. No evidence suggests a reasonable expectation that the Oregon legislature is likely to repeal the changes it made to the foreclosure process in the wake of *Tyler*. To the contrary, the legislature acknowledged that the prior process was unconstitutional. *See* H.B. 4056

§ 2(1) (setting forth procedure by which the counties "shall comply with . . . the ruling of the United States Supreme Court in Tyler v. Hennepin County, Minnesota, 598 U.S. 631 (2023)."). This acknowledgment suggests that the legislature will not repeal the new foreclosure process. No live controversy remains as to the facial challenges.

Because this Court concludes that the *Lynch* and *Sawyer* Plaintiffs' facial challenges to O.R.S. 275.275 are moot, this Court declines to address whether those challenges were timely brought. *See Lynch*, Lane County's MTD, ECF 54 at 13–14.

These claims are dismissed with prejudice. *Calvary Chapel San Jose v. Cody*, No. 20-CV-03794-BLF, 2022 WL 827116, at *6 (N.D. Cal. Mar. 18, 2022) (denying leave to amend moot declaratory relief claims).

### 2. Plaintiffs State Viable Takings and Excessive Fines Claims Under Federal Law

Defendants argue that, as alleged, no Fifth Amendment takings occurred because Oregon's foreclosure scheme is more akin to that in *Nelson v. City of New York*, 352 U.S. 103 (1956), than in *Tyler*. *Lynch*, Lane County's MTD, ECF 54 at 10–12; *Lynch*, Marion County's MTD, ECF 67 at 21–25; *Gabbert*, Defs.' MTD, ECF 31 at 17–20. The *Lynch* and *Sawyer* Defendants do not squarely address those Plaintiffs' excessive fines claims. Plaintiffs argue that *Tyler* controls, and that they state a valid takings claim in accordance with *Tyler*. *Lynch*, Plaintiffs' Response to Lane County's Motion to Dismiss ("Resp. to Lane County's MTD"), ECF 66 at 4–9; *Lynch*, Plaintiffs' Response to Marion County's Motion to Dismiss ("Resp. to Marion County's MTD"), ECF 77 at 22–27. This Court concludes that Oregon's statutory scheme is more akin to that in *Tyler* than *Nelson*, so *Tyler* controls.

Under the statutory scheme in *Tyler*, taxpayers had one year to pay their annual property taxes before becoming delinquent. 143 S. Ct. at 1373. If the taxpayer did not timely pay, the tax accrued interest and penalties, and the County obtained a judgment against the property,

PAGE 14 – OPINION AND ORDER ON MOTIONS TO DISMISS

transferring limited title to the State. *Id.* The delinquent taxpayer then had three years to redeem the property and regain title by paying all the taxes and late fees. *Id.* During that time, the taxpayer remained the beneficial owner of the property and could continue to live in it. *Id.* But if at the end of three years the bill had not been paid, absolute title vested in the State, and the tax debt was extinguished. *Id.* The State could keep the property for public use or sell it to a private party. *Id.* If the property was sold, any proceeds in excess of the tax debt and the costs of the sale remained with the County to be split between it, the town, and the school district. *Id.* The former owner had no opportunity to recover this surplus. *Id.*

Petitioner Geraldine Tyler's property had accumulated $2,300 in unpaid taxes and $13,000 in interest and penalties. *Id.* at 1374. "Acting under Minnesota's forfeiture procedures, Hennepin County seized [Tyler's] condo and sold it for $40,000, extinguishing the $15,000 debt. The County kept the remaining $25,000 for its own use." *Id.* (citation omitted). The Supreme Court held that, "[b]y doing so, it effected a 'classic taking in which the government directly appropriates private property for its own use.'" *Id.* at 1376 (quoting *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 324 (2002)). The Supreme Court concluded that Tyler had "stated a claim under the [Fifth Amendment's] Takings Clause and [wa]s entitled to just compensation." *Id.*

In reaching that conclusion, the Supreme Court distinguished *Nelson*. As the Supreme Court explained, the city ordinance in *Nelson* did not violate the Takings Clause because the ordinance "simply defined the process through which the owner could claim the surplus." *Id.* at 1379. Notably, in *Nelson*, the owners of foreclosed property had an opportunity to assert that the property had a value exceeding the tax due, and if the owners availed themselves of that opportunity, then a separate sale could have taken place so that they might receive the surplus.

*Id.* In contrast, the scheme in *Tyler* "provide[d] no opportunity for the taxpayer to recover the excess value." *Id.*

As recognized by the Oregon Legislature when it amended chapter 312 of the Oregon Revised Statutes, the State's foreclosure scheme previously lacked a process whereby a former property owner could seek return of the surplus proceeds from a foreclosure sale. This deficiency placed Oregon's scheme on all fours with *Tyler. See Gabbert*, Plaintiffs' Surreply, ECF 46 at 2–3. Until the amendment, there was no process by which former property owners in Oregon could challenge any retention of surplus proceeds. Defendant Counties were permitted to distribute surplus proceeds to taxing districts, including the Counties themselves, and Counties of a certain size were directed to distribute surplus proceeds in accordance with the statute. O.R.S. 275.275. Because *Tyler* controls, and the Plaintiffs have sufficiently pleaded that the Defendant Counties retained the surplus proceeds from the sale of the foreclosed properties, Plaintiffs state viable Fifth Amendment takings claims.

For good measure, this Court also concludes that the *Lynch* and *Sawyer* Plaintiffs state viable claims under the Excessive Fines Clause of the Eighth Amendment. *See Tyler*, 143 S. Ct. at 1381–82 (Gorsuch, J., concurring) (explaining the district court's errors in dismissing the excessive fines claim).

### 3. Collateral Estoppel and Res Judicata Doctrines Do Not Bar Plaintiffs' Federal Claims

Defendants argue that Plaintiffs' claims are barred by the doctrines of collateral estoppel and res judicata because Plaintiffs may not collaterally attack the state court foreclosure judgments. *Lynch*, Lane County's MTD, ECF 54 at 7–10; *Lynch*, Marion County's MTD, ECF 67 at 11–12; *Gabbert*, Defs.' MTD, ECF 31 at 11–12. Plaintiffs respond that their claims are not precluded by the foreclosure proceedings because they are not challenging those proceedings;

rather, they challenge the Defendant Counties' alleged *retention* of the surplus proceeds from the post-foreclosure property sales, a challenge they could not have raised during the foreclosure proceedings. *Lynch*, Resp. to Marion County's MTD, ECF 77 at 10–12; *Gabbert*, Plaintiffs' Response to Defendants' Motion to Dismiss ("Resp. to MTD"), ECF 35 at 3–5. On reply, Defendants assert that Plaintiffs could have raised "a claim for potential surplus proceeds" during the foreclosure process and prior to the entry of foreclosure judgment. *Lynch*, Lane County's Reply, ECF 92 at 5–7; *Lynch*, Marion County's Reply, ECF 94 at 2–6; *Gabbert*, Defendants' Reply, ECF 39 at 5–6.

     Plaintiffs' claims are not precluded. Under the previous foreclosure scheme, Plaintiffs did not have an opportunity to challenge the retention of the surplus or recover the surplus. Defendants' suggestion that Plaintiffs' claims are precluded because they could have raised such challenges during the foreclosure process is not reconcilable with *Tyler*. In *Tyler*, Minnesota's foreclosure statutes established a foreclosure scheme similar to Oregon's, and Ms. Tyler did not raise her claim to surplus proceeds before she filed suit. *See Lynch*, Resp. to Marion County's MTD, ECF 77 at 4–6 (comparing Minnesota and Oregon statutes). Plaintiffs needed not challenge the Counties' alleged retention of surplus proceeds during the foreclosure process because (1) the Counties had not yet made the final decision to *retain* any surplus, and (2) Plaintiffs are not challenging the foreclosure itself.

### 4. Federal Claims of Certain Plaintiffs Are Untimely

     Defendants argue that certain Plaintiffs' federal claims are barred by a two-year statute of limitations because, Defendants argue, these claims accrued outside the limitations period. *Lynch*, Lane County's MTD, ECF 54 at 14–16; *Lynch*, Marion County's MTD, ECF 67 at 20–21; *Gabbert*, Defs.' MTD, ECF 31 at 16–17. A statute of limitations defense may be raised in a motion to dismiss if the running of the statute is "apparent from the face of the complaint." *Seven*

*Arts Filmed Ent. Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013) (internal quotation marks omitted). Whether Plaintiffs' federal claims are time-barred depends on the proper point of accrual and which statute of limitations applies. As explained below, the federal takings and excessive fines claims are subject to a two-year statute of limitations, and these claims accrued at the expiration of the redemption period, when the properties were deeded to the Counties and the property owners' rights were completely extinguished.

### a. Accrual

"[T]he accrual date of a § 1983 cause of action is a question of federal law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007). The Supreme Court and Ninth Circuit have not yet decided the point of accrual for the statute of limitations purposes for federal takings and excessive fines claims based on the government's alleged foreclosure and retention of surplus proceeds. The Supreme Court's decision in *Tyler* did not expressly address accrual. This Court concludes that Plaintiffs' claims accrued at the expiration of the redemption period, when the Counties were deeded the properties and the property owners' rights were completely extinguished. In reaching its decision, this Court is guided by general accrual principles, ripeness case law, and common sense.

"Under federal law, a cause of action accrues when the plaintiff knows or has reason to know of the injury that is the basis of the action." *Belanus v. Clark*, 796 F.3d 1021, 1025 (9th Cir. 2015). Put another way, "[a]ccrual occurs when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Wallace*, 549 U.S. at 388 (cleaned up) (citations omitted). The injury alleged here is that the Counties took property worth more than the property tax obligation and retained this surplus without compensating the owners. *Lynch*, FAC, ECF 37 ¶ 101; *Sawyer*, Compl., ECF 1 ¶ 62. The question is when this taking occurred.

PAGE 18 – OPINION AND ORDER ON MOTIONS TO DISMISS

Defendants argue that Plaintiffs' alleged injuries occurred, and federal claims accrued, at the point of foreclosure. *See Gabbert*, Defs.' MTD, ECF 31 at 16–17. This, Defendants explain, is "when judgments were entered against [Plaintiffs'] properties, preventing them from recovering their equity, if any, after the redemption period and eventual sale." *Id.* at 17. In contrast, Plaintiffs argue that their federal claims did not accrue "until Plaintiffs were entitled to compensation," meaning "after Defendants sold the properties." *Gabbert*, Resp. to Defs.' MTD, ECF 35 at 6. This is so, Plaintiffs argue, because while "Plaintiffs certainly had a *right* to excess proceeds of the foreclosure sale, if such a surplus were ever to materialize . . . it was not until that right was denied that they had a *claim*." *Id.* (emphasis in original). Plaintiffs do not address when accrual occurs for a plaintiff, like Ortiz, whose property the County allegedly *kept* in lieu of sale. *See id*; *Lynch*, Resp. to Marion County's MTD, ECF 77 at 18–19; *Sawyer*, Resp. to Marion County's MTD, ECF 42 at 18–19.

Since this Court has located no binding precedent concerning the accrual of federal takings claims for statute of limitations purposes in the foreclosure context, this Court adopts the reasoning from recent Sixth Circuit cases finding that federal takings claims accrue at the expiration of the state's statutory redemption period.

First, in *Harrison v. Montgomery County, Ohio*, the Sixth Circuit held that the plaintiff's "federal takings claim was not ripe until the [government's] final decision to transfer the property." 997 F.3d 643, 650 (6th Cir. 2021). Though ripeness and accrual are analytically

PAGE 19 – OPINION AND ORDER ON MOTIONS TO DISMISS

distinct,[7] accrual cannot occur before the takings claim is ripe.[8] The Supreme Court has held in the ripeness context, that "[a] property owner has an actionable Fifth Amendment takings claim when the government takes his property without paying for it." *Knick v. Twp. of Scott*, 588 U.S. 180, 185 (2019). The Supreme Court has also held that a federal regulatory takings claim is ripe when the government makes "a final decision regarding the application of the . . . regulations to [the] property." *Williamson Cnty. Reg'l Plan. Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186 (1985), *rev'd on other grounds, Knick*, 588 U.S. at 189.

Applying these cases, the *Harrison* court held that the "final decision" test equally applies to the ripeness of physical takings, and therefore the plaintiff's "federal takings claim was not ripe until the [government's] final decision to transfer the property." 997 F.3d at 649–650. A final decision to take property occurs when it is "known to a reasonable degree of certainty what will happen to the property." *Id.* at 649 (internal quotation marks omitted).

Then, in *Beaver Street Investment, LLC v. Summit County, Ohio*, the Sixth Circuit addressed accrual for Fifth Amendment takings claims. 65 F.4th 822, 827 (6th Cir. 2023). Relying on *Harrison*,[9] the court held that the takings claim accrued at the expiration of the

---

[7] *Addington v. U.S. Airline Pilots Ass'n*, 606 F.3d 1174, 1183 n.6 (9th Cir. 2010) (explaining, in a non-takings case, that ripeness and accrual are related, but "there are key differences in the posture of a case that presents a statute of limitations issue and one that presents a ripeness issue").

[8] *Asociacion de Suscripcion Conjunta del Seguro de Responsabilidad Obligatorio v. Juarbe-Jimenez*, 659 F.3d 42, 51 (1st Cir. 2011); *Hensley v. City of Columbus*, 557 F.3d 693, 696 (6th Cir. 2009); *Norco Const., Inc. v. King Cnty.*, 801 F.2d 1143, 1146 (9th Cir. 1986) (Kennedy, J.) ("Courts have held consistently that a cause of action does not accrue until a party has a right to enforce the claim").

[9] The court acknowledged that while *Harrison* addressed ripeness, not accrual, "*Harrison* is still relevant . . . because it provides the general principle that for a taking to occur, 'there must be a final decision to take the property.'" *Beaver St. Invs.*, 65 F.4th at 827 (quoting *Harrison*, 997 F.3d at 649).

redemption period for four reasons: (1) there was no "final decision" to take the property until then, because if the property owner paid the taxes and fees during the redemption period, the county would have been prohibited from taking the property; (2) it was not clear that the county would seize the property by transferring title until after the redemption period ended; (3) until the redemption period ended, the county had not taken the plaintiff's property "without paying for it"; and (4) so long as the plaintiff still had the opportunity to retain title to the property, there was no "event which gives rise to the claim for compensation." *Id.* at 827.

This Court adopts the reasoning in *Beaver Street Investment* and concludes that the Plaintiffs' takings claims accrued at the expiration of the redemption period, when the properties are deeded to the county.[10] O.R.S. 312.120 provides that foreclosed properties are "held by the county for the period of two years from . . . foreclosure," during which the property owner can redeem the property by paying the full amount of taxes and fees owed. Only when the property owner fails to redeem within two years is the property deeded to the county, O.R.S. 312.200; O.R.S. 312.125(2)(c), completely extinguishing the property owners' rights to the property. This is when the government's decision to take the property is "final," because "every right or interest

_____

[10] In cases where the county sells or transfers title to the property before the expiration of the redemption period, accrual would necessarily occur at sale because title to a property with a value above the tax debt owed would then vest in some third party. At this point, the property owner knows or has reason to know that his or her rights to the property have been extinguished and that a surplus has been retained.

Another court in this District recently held that the plaintiff's federal takings claim accrued when the government "foreclosed on and took ownership" of the property. *Foshee v. Lane Cnty.*, No. 6:24-CV-00447-MC, 2024 WL 3970663, at *2 (D. Or. Aug. 26, 2024). In that case, the plaintiff filed her suit over six years after the foreclosure, and the court only briefly touched on the accrual analysis. *Id.* It is unclear based on the record in *Foshee* whether the foreclosure and the point at which the government "took ownership" of the property occurred simultaneously, because the complaint and the opinion in that case failed to differentiate the timing of the two events. Accordingly, because of this ambiguity and the decision's minimal focus on the accrual issue, this Court declines to follow *Foshee*'s holding on accrual.

of any person in the property [is] forfeited forever to the county." O.R.S. 312.125(2)(c); O.R.S. 312.200; *see also In re Hull*, 591 B.R. 25, 28 (Bankr. D. Or. 2018) (explaining that "aside from the right to redeem the property, possession during the redemption period remains the only right left to the former owners after judgment" and that "[b]oth of those rights terminate following the expiration of the redemption period").

This is also when the property owner knows "to a reasonable degree of certainty"[11] that their property value has a surplus for which the government has not compensated them. It is "[the Plaintiffs'] responsibility to know the value of the [their] Propert[ies]." *Foshee v. Lane Cnty.*, No. 6:24-CV-00447-MC, 2024 WL 3970663, at *3 (D. Or. Aug. 26, 2024). At the end of the redemption period, a homeowner should be able to know the approximate value of her own property and determine whether she has a claim against the government,[12] even if the precise extent of that harm is not yet clear. *See Jaquith v. Ferris*, 297 Or. 783, 788 (1984) (holding that it is "'immaterial that the extent of damages could not be determined at the time of the [taking]' for purposes of determining when the statute of limitation commenced to run" (citation omitted)).Regardless of what the County ultimately does with the property, at this point, the property owner knows or has reason to know that he or she no longer has a right to the property and that the County is in possession of a property that is worth more than the tax debt owed, "confiscat[ing] more property than was due." *Tyler*, 143 S. Ct. at 1376.

---

[11] *See Harrison*, 997 F.3d at 649 (citation omitted).

[12] A homeowner need not hire an appraiser to determine a property's approximate value. The approximate value of a property may be determined by reference to the county tax assessor's most recent valuation of the property. Although not an appraisal of the property's actual value, real estate websites can also indicate the sale price of comparable properties. *See, e.g.*, *What Is a Zestimate?*, Zillow, https://www.zillow.com/z/zestimate/ (last updated Apr. 27, 2023). While these numbers may not establish the true value of the property, they should be sufficient in most cases to alert the property owner to whether a surplus exists or not.

Foreclosure cannot be the point of accrual, as Defendants maintain, because the Counties do not yet have the authority make a "final decision" to take the property. As Plaintiffs point out, property owners retain an interest in the property during the redemption period, whereby they may redeem their properties after the date of the foreclosure judgment by paying "the full amount applicable to the property." *Sawyer*, Resp. to Marion County's MTD, ECF 42 at 18; O.R.S. 312.120 (providing redemption period).

The actual sale of property in excess of the tax debt also cannot be the point of accrual, as Plaintiffs maintain, because as described above, the taking already occurred when title vested in the County at the expiration of the redemption period. In support of their position, Plaintiffs cite two state court cases that appear to be interpreting the Michigan Constitution's Takings Clause. *See Gabbert*, Resp. to Defs.' MTD, ECF 35 at 11 (citing *Rafaeli, LLC v. Oakland Cnty.*, 505 Mich. 429, 476 (2020); then citing *Breiner v. State*, 344 Mich. App. 387, 405 (2022)). This Court is not persuaded by those cases. In *Rafaeli*, the court noted that the Michigan constitution provides property owners greater protection from uncompensated takings than does the United States constitution. 505 Mich. at 449–50. *Breiner*, for its part, addresses accrual under the state's foreclosure statute only briefly in a footnote. 344 Mich. App. at 406 n.5. Both cases also pre-date *Tyler*, which underlies the claims in this case. Further, adopting the sale date as the point of accrual for statute of limitations purposes does not account for property owners, like Ortiz, whose property the government keeps rather than sells. Having one accrual rule that accounts for all Plaintiffs is administrable and accounts for the fact that the alleged injury is the same for all Plaintiffs, regardless of what happens to the property next.

An excessive fines claim becomes ripe upon the "actual, or impending, imposition of the challenged fine." *Cheffer v. Reno*, 55 F.3d 1517, 1523 (11th Cir. 1995); *Duffner v. City of St.*

*Peters, Missouri*, 930 F.3d 973, 977 (8th Cir. 2019). Here, the excessive fines alleged by the

*Lynch* and *Sawyer* Plaintiffs was imposed when the title to the properties, with values exceeding

the tax obligation, vested in the Defendant Counties following the expiration of the redemption

period. Before this point, Plaintiffs could have redeemed their properties, avoiding the actual or

impending imposition of a fine.

### b.  Statute of Limitations

"Section 1983 does not contain its own statute of limitations." *Flynt v. Shimazu*, 940 F.3d

457, 461 (9th Cir. 2019) (internal quotation marks omitted). The Supreme Court has instructed

federal courts to borrow the state's statute of limitations for personal injury actions and apply it

to the § 1983 claim. *Nance v. Ward*, 597 U.S. 159, 174 (2022). Oregon's statute of limitations for

personal-injury actions is two years. *Douglas v. Noelle*, 567 F.3d 1103, 1109 (9th Cir. 2009)

(citing O.R.S. 12.110(1)). This Court applies a two-year statute of limitations to Plaintiffs'

federal claims.

Plaintiffs in *Lynch* and *Sawyer* urge this Court to borrow instead the six-year statute of

limitations for an inverse condemnation action under Oregon law. *See Lynch*, Resp. to Marion

County's MTD, ECF 77 at 21–22 (citing O.R.S. 12.080(4)). Plaintiffs raise two arguments for

applying this statute of limitations. First, they argue "courts have refused to apply the two-year

limitations period adopted from state tort law for § 1983 claims when addressing constitutional

interests on the basis that applying the statute of limitations is inconsistent with federal law or

policy." *Id.* at 21. Second, Plaintiffs, quoting O.R.S. 12.110(1), argue that Oregon state law

"carves out inverse condemnation actions," such as Plaintiffs', "from the two-year general tort

statute." *Id.* Neither argument is persuasive.

As to the first, Plaintiffs cite only one case in support, *Tearpock-Martini v. Borough of*

*Shickshinny*, 756 F.3d 232, 239 (3d Cir. 2014). In that case, the Third Circuit held that

PAGE 24 – OPINION AND ORDER ON MOTIONS TO DISMISS

Pennsylvania's two-year limitations period for tort claims did not apply to the plaintiff's § 1983

claim challenging the placement of a sign under the Establishment Clause of the First

Amendment. *Tearpock-Martini*, 756 F.3d at 239. Plaintiffs overlook the court's own limitation

on the reach of its holding as "extend[ing] only to Establishment Clause claims challenging a

still-existing display." *Id.* at 239 n.11; *see also Brown v. Pouncy*, 93 F.4th 331, 338 (5th Cir.

2024) (explaining that the *Tearpock-Martini* Court "did not apply the state's two-year residual

limitations period for personal injury claims, not because that period practically frustrated federal

interests, but because it concluded that the Establishment Clause claim could not be time-barred

as it was 'predicated on a still-existing display or practice.'"). [13] This Court sees no reason to

extend *Tearpock-Martini* to this case.

    As to the second argument that a state law carveout from the two-year person injury

limitations period alters the rule that all § 1983 claims are subject to the limitations period for

personal injury actions, Plaintiffs provide no federal case law in support. [14] Plaintiffs offer one

state case, *Suess Builders Co. v. City of Beaverton*, 294 Or. 254 (1982), which predates the

Supreme Court's decisions announcing the rule that § 1983 claims are subject to the limitations

---

[13] While two petitions for writ of certiorari to the Supreme Court were filed this year raising the issue of whether borrowing a state's statute of limitations for personal injury actions for § 1983 claims frustrates federal interests and whether a different method should be used to determine the appropriate limitations period, Petition for Writ of Certiorari, *Brown v. Pouncy* (No. 23-1332); Petition for Writ of Certiorari, *Monroe v. Conner* (No. 24-16), the Supreme Court denied both petitions.

[14] Nor has this Court located a case in which a court found that a carveout for certain types of actions altered the limitations period for a § 1983 claim. Rather, even for similar statutory schemes, *see* Cal. Code Civ. P. 335–349.4 (entitled, "The Time of Commencing Actions Other Than for the Recovery of Real Property"), courts have followed the rule of applying the limitations period set by the state's personal injury statute, *see Hacienda Valley Mobile Ests. v. City of Morgan Hill*, 353 F.3d 651, 655 (9th Cir. 2003) (explaining that California's statute of limitations for personal injury actions would apply to federal takings claims brought under § 1983).

PAGE 25 – OPINION AND ORDER ON MOTIONS TO DISMISS

period for personal injury actions. *See Wilson v. Garcia*, 471 U.S. 261, 280 (1985), *superseded on other grounds by statute as recognized in Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 379–80 (2004); *Owens v. Okure*, 488 U.S. 235, 250–51 (1989). The state law carve out does not alter the Supreme Court's rule that all § 1983 claims are subject to the personal injury statute of limitations.

Plaintiffs' federal takings claims, necessarily brought pursuant to § 1983,[15] are subject to the two-year limitations period set by the Oregon personal injury statute, O.R.S. 12.110(1)).

### c. Application

This Court now applies its findings that (1) Plaintiffs' federal claims accrued at the expiration of the redemption period and (2) the statute of limitations for these federal claims is two years. It finds that some Plaintiffs' claims are timely, whereas others are time-barred.

This Court grants Defendants' request for judicial notice,[16] under Federal Rule of Evidence 201, of the foreclosure dates contained in the judicial proceedings of Plaintiffs' properties. These dates are "not subject to reasonable dispute" because they are "generally known" and are taken from documents that are "matters of public record." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (internal quotation marks omitted); *see also Mackey v. JPMorgan Chase Bank, N.A.*, 931 Fed. App'x. 349, 351 (2020) (finding the district court did not abuse its discretion in taking judicial notice of a home equity line of credit and deed of trust because they were matters of public record). Further, no party has questioned the authenticity of these proceedings. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). Courts

---

[15] *Golden Gate Hotel Ass'n v. City & Cnty. of S.F.*, 18 F.3d 1482, 1486 (9th Cir. 1994) ("[A]ll claims of unjust taking ha[ve] to be brought pursuant to Section 1983 . . . .").

[16] *See* Lane County's MTD, ECF 54 at 4; Marion County's MTD, ECF 67 at 5.

"are not required to accept as true allegations that contradict . . . matters properly subject to judicial notice." *Seven Arts Filmed Ent. Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013).

The Gabbert complaint was filed on October 23, 2023. All *Gabbert* Plaintiffs' federal claims are timely except for the Newkirk, Wend and Gabbert Plaintiffs because the action was filed more than two years after the expiration of those Plaintiffs' respective redemption periods.

The Amended Complaint states that the Newkirk Property was foreclosed in 2019. *Gabbert* FAC, ECF 7 ¶ 36. Defendants' motion to dismiss clarifies that judgment was entered[17] on September 26, 2019. *See Gabbert*, Defs.' MTD, ECF 31 at 5–6 (citing *Jackson County v. American Building Company, Inc. et al.*, Jackson Co. Cir. Ct. No. 19CV35839). This Court therefore takes judicial notice that the Newkirk Property was foreclosed on September 26, 2019. The expiration of the redemption period was September 26, 2021, over two years before the *Gabbert* Plaintiffs filed suit. Plaintiff Newkirk's federal claims are accordingly time-barred.

As for the Wend Property, the Amended Complaint states that it was foreclosed in 2019, *Gabbert* FAC, ECF 7 ¶ 41, whereas Defendants' motion to dismiss says the foreclosure judgment was entered in October 2017. *See Gabbert*, Defs.' MTD, ECF 35 at 6 (citing *Columbia County v. 2305 Columbia Building LLC*, Columbia Co. Cir. Ct. No. 17CV39624). Defendants' state foreclosure judgment was allegedly entered on October 23, 2017, *id.*, but the cited case states "General Judgment [was] effective . . . October 16, 2017." This Court therefore takes judicial notice that the Wend Property was foreclosed on October 16, 2017. Accordingly,

---

[17] At the October 23, 2024, hearing, counsel for *Gabbert* Plaintiffs told this Court that "judgment" refers to pre-redemption foreclosure. ECF 116. This Opinion accordingly refers to foreclosure and judgment interchangeably, in accordance with the parties' briefing and counsel's explanation.

Plaintiff Wend's claims are time-barred because they were brought more than two years after the redemption period expired on October 23, 2019.

The same goes for the Gabbert property. The Amended Complaint alleges that Josephine County foreclosed on the Gabbert Property in March 2021 and sold it on or around December 3, 2021. *Gabbert*, FAC, ECF 7 ¶¶ 19–20. Defendants state that the Gabbert Plaintiffs "lost their interest in the property . . . through a judgment entered on October 12, 2018," citing a case from Josephine County in which judgment was entered on October 11, 2018. *Gabbert*, Defs.' MTD, ECF 31 at 5; *Josephine County v. Andrews et. al.*, 18CV37767 (Josephine Co. Cir. Ct., Oct. 11, 2018). This Court takes judicial notice of that date of judgment. Because the *Gabbert* lawsuit was filed after the expiration of the Gabbert Plaintiffs' redemption period in October 2020, Plaintiffs Matthew and Kelly Gabbert's federal claims are time-barred.

The Amended Complaint states the Arndt Property was foreclosed in 2019. *Gabbert* FAC, ECF 7 ¶ 27. *Gabbert* Defendants' motion to dismiss clarifies that judgment was entered on December 23, 2019. ECF 31 at 5 (citing *Marion County v. 10780 Main Street LLC*, Marion Co. Cir. Ct., No. 19CV37726). This Court takes judicial notice of that date. The redemption period on the Arndt Property accordingly ended on December 23, 2021. Since the *Gabbert* complaint was filed within two years of this date, Plaintiff Arndt's federal claims are timely. The same goes for the Gatchet Property. This Court takes judicial notice that the Gatchet Property was lost through the same judgment as the Arndt Property. *Id.* (citing *10780 Main Street*, Marion Co. Cir. Ct., No. 19CV37726). Plaintiffs Gatchet, Lichatowich, Hedges, and Smith's claims are timely.

The Langshaw Property was allegedly foreclosed in 2020, *Gabbert* FAC, ECF 7 ¶ 44, and Defendants do not contradict this. *See Gabbert*, Defs.' MTD, ECF 31 at 6. The redemption period for this property ended at some point in 2022. The *Gabbert* action was filed in October

2023, which is less than two years after the redemption period expired in 2022. Plaintiffs

Langshaw and Bowman's claims are therefore timely.

The Amended Complaint states the Rettig Property was foreclosed in 2019. *Gabbert*

FAC, ECF 7 ¶ 50. *Gabbert* Defendants' motion to dismiss clarifies that judgment was entered on

October 7, 2019. ECF 31 at 6 (citing *Klamath County v. Curtis*, Klamath Co. Cir. Ct. No.

19CV36444). This Court takes judicial notice of that date. The redemption period on the Rettig

Property accordingly ended on October 7, 2021. Since the *Gabbert* complaint was filed within

two years of this date, Plaintiff Rettig's claims are timely.

Turning to *Sawyer*, both Plaintiffs' federal claims are time-barred. The Sawyer lawsuit

was filed on December 28, 2023. Compl, ECF 1. Plaintiff Sawyer's property was foreclosed in

2014. *Sawyer* Compl., ECF 1 ¶ 10. The redemption period accordingly expired in 2016, several

years before filing suit on December 28, 2023. Plaintiff Ortiz's redemption period ended in 2019,

*id.* ¶ 17, also outside of the two-year statute of limitations.

Finally, none of the *Lynch* Plaintiffs brought their federal claims within the limitations

period. As discussed above, these claims necessarily accrued at the point of sale because the sale

occurred before the expiration of the redemption periods. As alleged, none of the properties were

sold less than two years before the filing of their lawsuit on October 12, 2023. *See Lynch* FAC,

ECF 37 ¶¶ 14, 23, 35, 48. Accordingly, all of their federal claims are time-barred.

In sum, the only Plaintiffs with timely federal takings claims are the following *Gabbert*

Plaintiffs: Arndt, Gatchet, Lichatowich, Hedges, Smith, Lanshaw, Bowman, and Rettig. The

*Lynch* and *Sawyer* Plaintiffs' federal takings and excessive fines claims are time-barred.

### i. Equitable tolling

Plaintiffs ask this Court to equitably toll the statute of limitations until the date of the

*Tyler* decision, or at least defer ruling on equitable tolling until a later stage of the litigation.

*Lynch*, Resp. to Marion County's MTD, ECF 77 at 19–22; *Lynch*, Resp. to Lane County's MTD, ECF 66 at 16–19. Plaintiffs are correct that "[a] motion to dismiss based on the running of the statute of limitations period may be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th Cir. 1995) (internal quotation marks omitted). This Court finds that equitable tolling is inappropriate at this stage. There are no "factual questions not clearly resolved in the pleadings" and the factual and legal issues are "sufficiently clear." *Id.*

This Court applies Oregon's tolling law. *Soto v. Sweetman*, 882 F.3d 865, 871 (9th Cir. 2018) ("Federal courts in § 1983 actions . . . borrow the state's tolling rules." (citing *TwoRivers v. Lewis*, 174 F.3d 987, 991–92 (9th Cir. 1999)).[18] "It is unclear . . . whether Oregon permits equitable tolling in the context of § 1983 and what the parameters of equitable tolling in Oregon, if allowed, may be." *Ofodrinwa v. Kizzar*, No. 3:24-CV-00463-HZ, 2024 WL 3510963, at *4 (D. Or. July 23, 2024). Other federal courts in the District of Oregon facing this same issue have concluded that Oregon courts would likely apply the equitable tolling doctrine and in so doing would use the general equitable tolling test. *See id.* at *4; *see also Malaer v. Kirkpatrick*, No. 1:20-CV-00049-CL, 2022 WL 4536258, at *2 (D. Or. Sept. 28, 2022); *Monical v. Marion Cnty.*, No. 6:18-CV-103-YY, 2021 WL 228891, at *4 (D. Or. Jan. 22, 2021). This Court agrees with the reasoning of those courts and adopts it here.

---

[18] "Equitable tolling is used sparingly in Oregon." *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1048 (9th Cir. 2016) (cleaned up). Such tolling "is available only when circumstances outside of the control of plaintiff make it impossible to comply with the statute of limitations." *Samuelson v. Jewell Sch. Dist. 8*, No. 3:22-CV-1923-SI, 2024 WL 1286539, at *14 (D. Or. Mar. 26, 2024) (internal quotation marks omitted). Plaintiffs have not argued that such circumstances arise here.

The general equitable tolling test requires that a litigant establish (1) that he or she has been pursuing his or her rights diligently, and (2) that some extraordinary circumstance stood in his or her way. *See Credit Suisse Sec. (USA) LLC v. Simmonds*, 566 U.S. 221, 227 (2012). "The first element requires the effort that a reasonable person might be expected to deliver under his or her particular circumstances and asks whether the plaintiff was without any fault in pursuing his claim." *Booth v. United States*, 914 F.3d 1199, 1207 (9th Cir. 2019) (internal quotation marks, citations and alteration omitted). "The second element requires the litigant to 'show that extraordinary circumstances were the cause of his untimeliness and made it impossible to file the document on time.'" *Id.* (alterations omitted) (quoting *Kwai Fun Wong v. Beebe*, 732 F.3d 1030, 1052 (9th Cir. 2013), *aff'd & remanded sub nom. United States v. Wong*, 575 U.S. 402 (2015)). "Whether a particular untimely claim may be excused for a particular reason varies with the reason." *Id.* (quoting *Wong*, 732 F.3d at 1051).

This Court finds that equitable tolling is not appropriate here based on the allegations in the complaint and Plaintiffs' arguments. *Lynch* Plaintiffs argue the Jaquith Plaintiffs' delay is excusable because they "had no notice" regarding the existence or amount of surplus proceeds or the sale of their property. *Lynch*, Resp. to Marion County's MTD, ECF 77 at 20. They argue the amount of surplus depends on multiple factors, of which the County did not provide notice. *Id.* As outlined above, the general equitable tolling test does not ask about Plaintiff's knowledge or notice of their claim; that is the inquiry under the separate discovery rule doctrine. Regardless, Plaintiffs fail to allege facts from which this Court could determine that the Jaquith Plaintiffs pursued their rights diligently, or that some extraordinary circumstance stood in their way.

Plaintiffs also argue that since O.R.S. 275.275 prevented them from recovering surplus proceeds, it was "reasonable" for them to not have knowledge of the existence of their claims

until *Tyler* was decided. *Lynch*, Resp. to Marion County's MTD, ECF 77 at 20. The Ninth

Circuit's cases recognizing a change in the law as a basis for equitable tolling appear to be

limited to the immigration law context.[19] This Court does not apply those cases to these

circumstances. Further, as explained above, the statutory foreclosure scheme in *Tyler* is

remarkably similar to Oregon's scheme—including neither having a process for property owners

to recover surplus proceeds—and yet Ms. Tyler pursued an action. *Tyler* did not mark a change

in the law such that it excuses the delay in bringing these claims. As the Supreme Court

explained in *Tyler*, the principle underlying its decision "trace[s] its origins at least as far back as

. . . 1215," and a majority of states required that the surplus proceeds be returned to the taxpayer.

143 S. Ct. at 1376. Even liberally construed, the *Lynch* and *Sawyer* Complaints do not

adequately allege facts showing the potential applicability of the equitable tolling doctrine. And

Plaintiffs do not argue that such facts exist.

The time-barred federal claims are dismissed without leave to amend, as granting leave to

amend would be futile. *Novak v. United States*, 795 F.3d 1012, 1020 (9th Cir. 2015) ("Futility

alone can justify a court's refusal to grant leave to amend."); *Platt Elec. Supply, Inc. v. EOFF

Elec., Inc.*, 522 F.3d 1049, 1060 (9th Cir. 2008) (affirming district court's dismissal of a time-

barred claim without leave to amend because "any amendments would have been futile").

## B. State-Law Claims

Plaintiffs across all three cases bring state-law claims asserting violations of the Article I,

Section 18 of the Oregon Constitution. Plaintiffs allege that the Defendant Counties' failure to

return surplus from sales of foreclosed properties, or ongoing retention and use of properties

---

[19] *See Lona v. Barr*, 958 F.3d 1225 (9th Cir. 2020); *Goulart v. Garland*, 18 F.4th 653 (9th Cir. 2021); *Le v. Barr*, 824 F. App'x 464 (9th Cir. 2020). This Court has also has not located any Oregon case law supporting Plaintiff's proposition.

without providing just compensation, amounts to an unconstitutional taking. This Court first addresses whether the Plaintiffs have sufficiently alleged a taking for public use under the Oregon constitution. It then addresses the applicable statute of limitations for Plaintiffs' state law takings claims and determines whether Plaintiffs' state claims are timely.

### 1. Plaintiffs Sufficiently Pleaded Taking for Public Use

Article I, Section 18 of the Oregon Constitution states: "Private property shall not be taken for public use . . . without just compensation." The *Lynch* and *Sawyer* Defendants argue that Plaintiffs fail to allege that Defendants intended to take their property "for public use" and thus fail to state a viable state-law takings claim. *Lynch*, Marion County's MTD, ECF 67 at 16–20; *Lynch*, Lane County's MTD, ECF 54 at 19–21. Plaintiffs respond that they have sufficiently pleaded that Defendants took their property for public use. *Lynch*, Resp. to Lane County's MTD, ECF 66 at 23–25; *Lynch*, Resp. to Marion County's MTD, ECF 77 at 16–18. Plaintiffs allege that the Counties took and either sold or retained the properties for public use and without providing just compensation.[20] Accepting Plaintiffs' well-pleaded allegations as true and drawing inferences in their favor, Plaintiffs have sufficiently alleged that Defendants directly took their property without compensation and used it for public use by distributing it to taxing districts and other general funds in accordance with O.R.S. 275.275.

### 2. State-Law Takings Claims of Certain Plaintiffs Are Untimely

Defendants argue that various statutes of limitations apply to Plaintiffs' state-law claims that make them untimely. *Lynch*, Marion County's MTD, ECF 67 at 12–13 (two-year statute of limitations under O.R.S. 312.230(1)); *Gabbert*, Defs.' MTD, ECF 31 at 12–13 (same); *Lynch*,

---

[20] *See Sawyer*, ECF 1 at ¶¶ 2, 6, 13, 23, 38, 61, 83, 87, 100; *Lynch*, ECF 37 at ¶¶ 4, 48, 107, 121, 125, 126, 138–139.

Lane County's MTD, ECF 54 at 16–17 (six-year statute of limitations under O.R.S. 12.080(3)). Plaintiffs argue that the six-year statute of limitations set by O.R.S. 12.080 applies to their state law takings claims. *Lynch*, Resp. to Lane County's MTD, ECF 66 at 20; *Gabbert*, Resp. to Defs.' MTD, ECF 35 at 12. This Court concludes that the six-year statute of limitations applies.[21]

The Parties also disagree about when the state law takings claims accrued. For instance, Defendant Lane County argues that Plaintiff Two J's state-law takings claim accrued when the redemption period expired and its property was deeded to Lane County, *Lynch*, Lane County's MTD, ECF 54 at 16, whereas Plaintiffs argue that this claim accrued when Lane County kept the surplus proceeds after selling the property, *Lynch*, Resp. to Lane County's MTD, ECF 66 at 20.

The Oregon Supreme Court recently addressed the applicable accrual analysis and statute of limitations for a takings claim brought pursuant to Article I, Section 18 of the Oregon Constitution. *Walton v. Neskowin Reg'l Sanitary Auth.*, 372 Or. 331 (2024). The Oregon Supreme Court explained that a takings claim accrues "as soon as [the] property is taken" and that a six-year statute of limitations applies. *Id.* at 354. The Oregon Supreme Court also stated: "[a] government can exercise its power of eminent domain to physically take property in two ways. It can initiate condemnation proceedings, through which the amount of compensation due to the owner is determined and a court order awarding the property to the government can be obtained, or it can physically occupy the property without a court order." *Id.* at 340.

Here, as alleged, the Counties "physically occup[ied] the propert[ies]," *Walton*, 372 Or. at 340, only after the expiration of the redemption period when the Counties are deeded the

---

[21] Defendants' reliance on O.R.S. 312.230(1) is misplaced. This statute applies to actions brought "for the purpose of determining the validity of a sale of real property on foreclosure for delinquent taxes, or to quiet title against such sale, or to remove the cloud thereof, or to recover possession of the property." O.R.S. 312.230(1). The instant suit is not brought for these purposes.

properties, and they acquired properties with an excess value of the tax debts owed.[22] Physical occupation could not have occurred any sooner because the Counties were prohibited by law from taking the properties during the redemption period. *See* O.R.S. 312.180 ("The sale of property to the county on foreclosure for delinquent taxes does not affect the former owner's right to possession of the property during the period of redemption."); *In re Hull*, 591 B.R. 25, 28 (Bankr. D. Or. 2018) (holding that, under O.R.S. 312.180, owners retain the right to possess the property during the redemption period even after judgment).

All *Gabbert* Plaintiffs' state law claims are timely, as they filed suit within six years after the expiration of each redemption period. Plaintiff Sawyer's state claim is time-barred because the *Sawyer* claim, filed December 28, 2023, was not within six years of the expiration of the redemption period in 2016. *Sawyer*, Compl., ECF 1 ¶ 10. Plaintiff Sawyer's state claim is dismissed without leave to amend as amendment would be futile. *Platt Elec. Supply*, 522 F.3d at 1060. Finally, the *Lynch* Amended Complaint alleges that Lane County sold the Two J's property and retained surplus proceeds in 2017. *Lynch* FAC, ECF 37 ¶¶ 23, 25. The initial Complaint in *Lynch* was filed on October 12, 2023. *Lynch*, ECF 1. Without the exact date on which the proceeds were retained, this Court cannot determine whether this claim falls within the six-year limitations period.[23] At this stage, this Court declines to dismiss Plaintiff Two J's claim as time-barred.

---

[22] Or, as stated above, in cases where the county sells or transfers title to the property before the expiration of the redemption period, when a property is sold, rendering a surplus, or title to a property with a value above the tax debt owed vests in some third party.

[23] Plaintiffs are advised that in their proposed Consolidated Amended Complaint, ECF 108-1, *see infra* Part C.3, Plaintiffs should plead with specificity when in 2017 Lane County foreclosed on the Two J's Property.

### 3. The Oregon Tort Claims Act Is Inapplicable

Defendants argue that the Oregon Tort Claims Act ("OTCA") applies to Plaintiffs' state-law takings claims, and that dismissal is required under the OTCA for three reasons:

(1) Defendants are entitled to apparent authority immunity under O.R.S. 30.265(6)(f);[24]

(2) Plaintiffs failed to provide pre-suit notice in accordance with O.R.S. 30.275(1);[25] and

(3) Plaintiffs failed to commence their actions within the two-year statute of limitations set by O.R.S. 30.275(9).[26] Plaintiffs respond that their state-law takings claims are best categorized as inverse condemnation actions, not tort actions, and so the OTCA is inapplicable. *See Gabbert*, Resp. to Defs.' MTD, ECF 35 at 12–13; *Lynch*, Resp. to Lane County's MTD, ECF 66 at 26.

Oregon courts have explained that inverse condemnation actions under the Oregon Constitution are not tort actions, *see, e.g.*, *Vokoun v. City of Lake Oswego*, 189 Or. App. 499, 510 (2003), and this Court follows that guidance here. The OTCA does not apply to Plaintiffs' state-law takings claims.

### C. Outstanding Motions

### 1. Motion to Amend Complaint in *Lynch*

Plaintiffs in *Lynch* move for leave to amend their complaint to add the *Sawyer* Plaintiffs, add four additional Plaintiffs, remove Plaintiff Nancy Bender, and to incorporate the class definition pleaded in *Sawyer*. *Lynch*, ECF 108. Plaintiffs argue that these amendments will

---

[24] *Lynch*, Lane County's MTD, ECF 54 at 21–22; *Lynch*, Marion County's MTD, ECF 67 at 14–15; *Gabbert*, Defs.' MTD, ECF 31 at 14–15.

[25] *Lynch*, Marion County's MTD, ECF 67 at 15–16; *Lynch*, Lane County's MTD, ECF 54 at 22 n.8; *Gabbert*, Defs.' MTD, ECF 31 at 15–16.

[26] *Lynch*, Marion County's MTD, ECF 67 at 16; *Lynch*, Lane County's MTD, ECF 54 at 22 n.8; *Gabbert*, Defs.' MTD, ECF 31 at 16–17.

streamline the litigation and not prejudice Defendants because they collapse the two consolidated cases into a single case. *Id.* at 5. Defendants Multnomah County, Lane County, Yamhill County, and Marion County do not oppose the motion, and Clackamas County takes no position. *Id.* at 2. This Court agrees with Plaintiffs and grants their motion, although as decided above, Plaintiff Sawyer's claim is dismissed entirely as time-barred, and Plaintiff Ortiz's federal claim is dismissed as time-barred.

Of the four additional Plaintiffs added to the proposed Amended Complaint, Plaintiffs only provide the foreclosure date as to one Plaintiff, Scooter 97, LLC ("Scooter"). *See Lynch*, Proposed Consolidated Amended Complaint, ECF 108-1 at 5, 8–12. This proposed allegation states that Lane County foreclosed on and sold the Scooter property in 2018. *Id.* ¶ 24. This means the redemption period would have expired in 2020—three years before the suit was first filed—and Plaintiffs do not allege that Scooter exercised its right of redemption by paying the outstanding tax debt. Plaintiffs are advised that Scooter's federal claim is likely time-barred, unless Plaintiffs can allege sufficient facts for this Court to equitably toll Scooter's claim.

As for the other proposed additional Plaintiffs, Michelle J. Sparks-Smith, Christer Ferretti, and Brent Dorrell, Plaintiffs do not state when those properties were foreclosed. *See id*. ¶¶ 51–52, 64–65, 71–73. At this point, this Court cannot tell whether these Plaintiffs' claims are timely. Plaintiffs' Amended Consolidated Complaint must allege with specificity the date on which the Defendant Counties foreclosed on these Plaintiffs' properties, or when the redemption periods expired.

Plaintiffs have twenty-one (21) days from the filing of this opinion to amend their complaint. As requested by Plaintiffs in their Motion, this Court will permit Defendants thirty (30) days from the filing of the Amended Complaint to respond.

### 2.  Motions to Intervene

Other Oregon Counties move to intervene in each of the three cases. *Lynch*, ECF 42;

*Sawyer*, ECF 8; *Gabbert*, ECF 37. This Court finds that intervention is inappropriate at this time.

The proposed intervenors have not met their burden of showing that the "existing parties may not

adequately represent [their] interest[s]." *United States v. Alisal Water Corp.*, 370 F.3d 915, 919

(9th Cir. 2004) (internal quotation marks omitted). Specifically, the proposed intervenors share

the "same ultimate objective" as Defendants, and they have not made a "very compelling

showing" to rebut the "presumption of adequacy" afforded to the existing parties. *See Arakaki v.

Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003). The motions to intervene are therefore denied.

### 3.  Motion to Consolidate

As noted above, this Court consolidated *Lynch* and *Sawyer* for all purposes. Defendants

moved to consolidate *Gabbert* as well. *Gabbert*, ECF 38.

Federal Rule of Civil Procedure 42(a) provides that "[i]f actions before the court involve

a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at

issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid

unnecessary cost or delay." "In making this determination, the court must weigh the interest in

judicial convenience against the potential delay, confusion and prejudice caused by

consolidation." *Gilberto v. Walgreen Co.*, No. 3:18-CV-01003-AC, 2019 WL 13180888, at *2

(D. Or. May 6, 2019) (internal quotation marks omitted). Courts "enjoy substantial discretion in

deciding whether and to what extent to consolidate cases." *Hall v. Hall*, 584 U.S. 59, 77 (2018).

Though *Gabbert* shares some questions of law with *Lynch* and *Sawyer*, the parties and

claims are not sufficiently similar to merit consolidation. *Gabbert* alleges only a plaintiff class,

not both a plaintiff and defendant class, and only takings claims, not excessive fines claims.

Given these differences, consolidation would potentially delay and prejudice the *Gabbert*

Plaintiffs. The potential for delay and prejudice outweighs any judicial convenience that would result from consolidation. This Court denies the motion to consolidate, with leave to renew in the future, if all remaining parties agree consolidation is appropriate

## CONCLUSION

The Motions to Dismiss filed in *Lynch*, 3:23-cv-01502-IM, ECF 54 and 67, *Sawyer*, 3:23-cv-01971-IM, ECF 35, and *Gabbert*, 1:23-cv-01434-IM, ECF 31, are GRANTED in part and DENIED in part. *Lynch* and *Sawyer* Plaintiffs' facial challenges to O.R.S. 275.275 are DISMISSED with prejudice as moot. The federal claims of *Gabbert* Plaintiffs Newkirk, Wend, and Gabbert, all *Lynch* Plaintiffs, and all *Sawyer* Plaintiffs are DISMISSED with prejudice as time-barred. Plaintiff Sawyer's state law claim is also DISMISSED with prejudice as time-barred. This Court declines to dismiss Plaintiff Two J's state claim as time-barred at this stage. The Defendants' Motions are DENIED as to the rest of the state-law statute of limitations affirmative defenses. *Lynch* Plaintiffs' Motion for Leave to File an Amended Complaint, ECF 108, is GRANTED, though the Amended Complaint should account for this Court's rulings in this Opinion and Order. Gabbert Defendants' Motion to Consolidate, 1:23-cv-01434-IM, ECF 38, and Motion to Intervene, ECF 37, are DENIED. Plaintiffs have twenty-one (21) days from the issuing of this Opinion and Order to file an Amended Complaint. Defendants will have thirty (30) days from the filing of the Amended Complaint to respond.

**IT IS SO ORDERED.**

DATED this 27th day of December, 2024.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge

PAGE 39 – OPINION AND ORDER ON MOTIONS TO DISMISS