**David F. Sugerman**, OSB No. 862984
**Nadia H. Dahab**, OSB No. 125630
SUGERMAN DAHAB
101 SW Main Street Ste. 910
Portland, OR 97204
Tel: (503) 228-6474
david@sugermandahab.com
nadia@sugermandahab.com

*Attorneys for Plaintiffs*
*(Additional counsel listed on signature page)*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| MARTIN LYNCH, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>MULTNOMAH COUNTY, et al.,<br><br>Defendants. | Case No. 3:23-cv-01502-IM (lead case)<br><br>**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT WITH DEFENDANT MULTNOMAH COUNTY** |

## TABLE OF CONTENTS

LOCAL RULE 7-1 CERTIFICATION ........................................................................................ 1

MOTION.................................................................................................................................... 1

MEMORANDUM ...................................................................................................................... 1

BACKGROUND ....................................................................................................................... 4

    I.    Procedural History ........................................................................................... 4

    II.    Factual and Legal Background ......................................................................... 5

    III.    Terms of the Settlement ................................................................................... 6

ARGUMENT ............................................................................................................................. 9

    I.    The Settlement should be finally approved as fair, reasonable, and adequate................. 10

        A.    The litigation strategy factors favor approval....................................... 12

        B.    The amount of the class settlement favors approval.............................. 13

        C.    The extent of discovery completed favors approval. ............................ 14

        D.    The experience and views of class counsel support approval............................. 15

        E.    The reaction of the Settlement Class Members favors approval. ......................... 16

        F.    There is no evidence of collusion. ........................................................ 16

        G.    The Rule 23(e)(2) considerations favor approval………………………………..17

    II.    Settlement Class Members received best notice practicable under the circumstances..... 20

    III.    The Court Should Make a Final Determination That the Proposed Settlement Class Satisfies the Standard for Certification Under Rule………………………………………..22

        A.    The Rule 23(a) Requirements Are Met.................................................. 23

        B.    The Rule 23(b)(3) Requirements For a Settlement Class Are Met....................... 26

CONCLUSION.......................................................................................................................... 29

## TABLE OF AUTHORITIES

**Cases**

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
 568 U.S. 455 (2013) ................................................................................................ 27

*Bell v. Consumer Cellular, Inc.*,
 No. 3:15-cv-941-SI, 2017 WL 2672073 (D. Or. June 21, 2017) ....................................... 15, 18

*Brinkmann v. ABM Onsite Servs.–West, Inc.*,
 No. 3:17-cv-0275-SI, 2021 WL 3932040 (D. Or. Sept. 2, 2011) ................................. 12, 13, 15

*Chahalem Phys. Therapy v. Coventry Health Care, Inc.*,
 No. 3:09-CV-00320-HU, 2014 WL 4373150 (D. Or. Sept. 3, 2014) ...................................... 20

*Churchill Vill., LLC v. Gen. Elec.*,
 361 F.3d 566 (9th Cir. 2004) ................................................................................... 10, 11

*Costelo v. Chertoff*,
 258 F.R.D. 600 (C.D. Cal. 2009) .................................................................................. 25

*Couser v. Comenity Bank*,
 125 F. Supp. 3d 1034 (S.D. Cal. 2015) ........................................................................... 15

*Ellis v. Costco Wholesale Corp.*,
 657 F.3d 970 (9th Cir. 2011) ............................................................................... 23, 25, 26

*Fosbre v. Las Vegas Sands Corp.*,
 2015 WL 3722496 (D. Nev. June 15, 2015) ...................................................................... 28

*Granados v. Onpoint Comm. Credit Union*,
 No. 3:21-cv-847-SI, 2025 WL 1640204 (D. Or. June 10, 2025) ........................................... 19

*Hanlon v. Chrysler Corp.*,
 150 F.3d 1011 (9th Cir. 1988) ............................................................................... passim

*Hanon v. Dataproducts Corp.*,
 976 F.2d 497 (9th Cir. 1992) ..................................................................................... 25

*Hurst v. First Student, Inc.*,
 No 3:15-cv-00021-HZ, 2015 WL 6437196 (D. Or. Oct. 22, 2015) ................................... 24, 25

*In re Anthem, Inc. Data Breach Litig.*,
 327 F.R.D. 299, 320-21 (N.D. Cal. 2018) ......................................................................... 16

*In re Bluetooth Headset Prod. Liab. Litig.*,
 654 F.3d 935 (9th Cir. 2011) ................................................................................... 11, 16

*In re Hyundai & Kia Fuel Economy Litig.*,
 926 F.3d 539 (9th Cir. 2019) ................................................................................... 12, 22

*In re Mego Fin. Corp. Sec. Litig.*,
 213 F.3d 454 (9th Cir. 2000) ..................................................................................... 13

*In re Online DVD-Rental Antitrust Litig.*,
 779 F.3d 934 (9th Cir. 2015) ..................................................................................... 10

*In re Pac. Enters. Sec. Litig.*,
 47 F.3d 373 (9th Cir. 1995) ...................................................................................... 15

*In re Portland Gen. Elec. Sec. Litig.*,
No. 3:20-cv-1583-SI, 2022 WL 844077 (Mar. 22, 2022) ........................................................ 12
*In re Syncor ERISA Litig.*,
516 F.3d 1096 (9th Cir. 2008) ................................................................................................. 10
*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*,
895 F.3d 597 (9th Cir. 2018) .................................................................................................. 11
*In re Zynga Sec. Litig.*,
2015 WL 6471171 (N.D. Cal. Oct. 27, 2015) ......................................................................... 19
*Jimenez v. Allstate Ins. Co.*,
765 F.3d 1161 (9th Cir. 2014) ................................................................................................. 24
*Lane v. Facebook, Inc.*,
696 F.3d 811 (9th Cir. 2012) ................................................................................. 4, 11, 22, 23
*Linney v. Cellular Alaska P'ship*,
151 F.3d 1234 (9th Cir. 1998) ................................................................................................. 14
*Magallon v. Robert Half Int'l Inc. (Magallon I)*,
No. 6:13-cv-01478-SI, 2025 WL 1424248 (D. Or. May 7, 2025) ............................... 11, 12, 16
*Monterrubio v. Best Buy Stores, L.P.*,
291 F.R.D. 443 (E.D. Cal. 2013) ............................................................................................ 14
*Moss v. U.S. Secret Serv.*,
No. 1:06–cv–3045–CL, 2015 WL 5705126 (D. Or. Sept. 28, 2015) .................................. 23, 27
*Mullane v. Cen. Hanover Bank & Trust Co.*,
339 U.S. 306 (1950) ................................................................................................................ 20
*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004) .............................................................................................. 9
*O'Shea v. Am. Solar Solutions, Inc.*,
318 F.R.D. 633 (S.D. Cal. 2017) ............................................................................................. 28
*Officers for Justice v. Civil Serv. Comm'n of City and Cnty. of San Fran.*,
688 F.2d 615 (9th Cir. 1982) .................................................................................................. 12
*Pecover v. Elec. Arts Inc.*,
No. C 08–2820 VRW, 2010 WL 8742757 (N.D. Cal. Dec. 21, 2010) ..................................... 24
*Radcliffe v. Hernandez*,
794 F. App'x 605 (9th Cir. 2019) ............................................................................................ 19
*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) ............................................................................................ 11, 22
*Roes, 1-2 v. SFBSC Mgmt., LLC*,
944 F.3d 1035 (9th Cir. 2019) ................................................................................................ 15
*Simpson v. Fireman's Fund Ins. Co.*,
231 F.R.D. 391 (N.D. Cal. 2005) ............................................................................................ 25
*Stearns v. Ticketmaster Corp.*,
655 F.3d 1013 (9th Cir. 2011) ................................................................................................ 26
*Sullivan v. Kelly Servs.*,
268 F.R.D. 356 (N.D. Cal. 2010) ............................................................................................ 25

ii – TABLE OF AUTHORITIES

*Torres v. Mercer Canyons Inc.*,
  835 F.3d 1125 (9th Cir. 2016) ........................................................................ 27
*Tyson Foods, Inc. v. Bouaphakeo*,
  577 U.S. 442 (2016) ........................................................................................ 27
*Villanueva v. Liberty Acquisitions Servicing, LLC*,
  319 F.R.D. 307 (D. Or. 2017) ........................................................................ 23
*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ........................................................................................ 24

**Statutes**

ORS 275.090 ........................................................................................... 7, 14
ORS 275.275 ....................................................................................... 7, 14, 24

**Rules**

Fed. R. Civ. P. 23 ..................................................................................... passim

**Treatises**

*Manual for Complex Litigation (Fourth)* § 21.61 (2015) ............................ 10

## LOCAL RULE 7-1 CERTIFICATION

Multnomah County consents to this motion and to the entry of the proposed order finally approving the settlement and certifying the class for settlement purposes.

## MOTION

Plaintiffs move the Court pursuant to Federal Rule of Civil Procedure ("Rule") 23 for final approval of the proposed class action settlement with Defendant Multnomah County ("Defendant" or "Multnomah County"). Plaintiffs ask that the Court enter an order in the form agreed to by the settling parties and attached hereto (*see* Exhibit 2), (1) finally approving the proposed settlement; (2) certifying the class for settlement purposes; (3) appointing Kyle Queahpama as heir of the Estate of Roberta Queahpama as the class representative for the Settlement Class; and (4) appointing Fink Bressack; Kohn, Swift & Graf, P.C.; and Preti, Flaherty, Beliveau & Pachios, Chartered, LLP as Lead Counsel and Sugerman Dahab as Liaison Counsel for the Settlement Class. Plaintiffs' motion is supported by the memorandum set forth below and the Declaration of Frank Ballard of Kroll Settlement Administration LLC Regarding Notice Compliance ("Kroll Decl."), filed concurrently herewith (*see* Exhibit 3).

## MEMORANDUM

Plaintiffs in these consolidated cases seek recovery on behalf of themselves and a class of individuals whose tax-foreclosed properties were taken by the Defendant counties and either sold for an amount that exceeds the tax debt or retained by the county. Plaintiffs allege that Multnomah County and the other Defendant counties violated the class members' constitutional rights by retaining the value of tax-foreclosed property in excess of the delinquent taxes owed (the "Surplus Proceeds").

Page 1 - PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT WITH DEFENDANT MULTNOMAH COUNTY

Plaintiffs are confident in the merits of their claims but recognize the various risks, delays, and costs associated with further litigation. Accordingly, Plaintiffs have worked extensively with Multnomah County towards a resolution of this dispute. Following lengthy arms'-length negotiations, Plaintiffs and Multnomah County reached a proposed class settlement to resolve this dispute, the terms of which are set forth in the settlement agreement attached as Exhibit 1 (the "Settlement").

The proposed Settlement will result in payment into a common fund by Multnomah County of an amount representing 100 percent of the Surplus Proceeds held by Multnomah County, plus interest at the statutory rate of 9 percent, for a total settlement payment of $3,515,759.25. After the costs of notice, claims administration, reasonable Court approved attorneys' fees, litigation costs and expenses, and a service award are paid out of the settlement fund, each settlement class member who submits a valid and timely claim will be eligible for a payment. Depending on the total amount of valid, approved claims, each settlement class member who submits a valid claim may receive up to the full amount of the Surplus Proceeds applicable to the Settlement Class Members' Eligible Property, plus interest at the statutory rate of 9 percent on the Surplus Proceeds from the expiration date of redemption period for their property through the date of the Settlement Agreement.[1]

On July 16, 2025, this Court entered an order granting preliminary approval of the proposed settlement; preliminarily finding that the parties' settlement was fair, reasonable, and adequate; and finding that the prerequisites for a class action had been satisfied. ECF 150. The Court's order further directed the parties to provide notice to the Class. *Id.*

---

[1]    "Eligible Claim," "Settlement Class," and all other undefined capitalized terms have the meanings ascribed to them in the Settlement Agreement, which is attached as Exhibit 1.

Page 2 - PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT WITH DEFENDANT MULTNOMAH COUNTY

Since that time, Kroll Settlement Administration LLC ("Kroll") has begun implementation of the court-approved notice program. *See* Kroll Decl. ¶¶ 3–14. No objections or requests for exclusion have been received. Kroll Decl. ¶ 16. Kroll has mailed 112 notices and emailed 87 notices to a total of 199 potential Class Members, issued a press release over PR Newswire's Oregon newsline, and published the Summary Notice in the print version of *The Oregonian*. Kroll Decl. ¶¶ 3, 8, 11, 13, 14. Kroll commenced an online ad campaign on September 2, 2025, that will be substantially completed by October 2, 2025. Kroll Decl. ¶ 12. Kroll will provide another declaration to the Court with further updated information on the implementation of the notice program after the online ad campaign is completed and the opt-out and objection deadline of November 3, 2025, has passed. Kroll Decl. ¶¶ 1, 15.

Plaintiffs now seek entry of the Proposed Order granting (1) final approval of the Settlement; (2) certification of a Settlement Class; (3) appointment of Kyle Queahpama as heir of the Estate of Roberta Queahpama as the class representative for the Settlement Class; and (4) appointment Fink Bressack; Kohn, Swift & Graf, P.C.; and Preti, Flaherty, Beliveau & Pachios, Chartered, LLP as Lead Counsel and Sugerman Dahab as Liaison Counsel for the Settlement Class.

The Court should finally approve the proposed settlement under the well-established standards in the Ninth Circuit for approval of class settlements pursuant to Rule 23: Plaintiffs and their counsel have proven to be adequate representatives; the Settlement resulted from an extensive, arms'-length negotiation; the Settlement affords Settlement Class Members substantial, significant, and immediate relief; the Settlement treats Settlement Class Members equitably; Plaintiffs' and their counsel's endorsement of the Settlement is entitled to significant weight; and the public interest in settling class actions supports approval of the Settlement.

Page 3 - PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT WITH DEFENDANT MULTNOMAH COUNTY

Plaintiffs and their counsel have effectively litigated their claims, including successfully opposing motions to dismiss the Complaint, and have negotiated a substantial settlement with Multnomah County. The Settlement would yield an excellent recovery for the Settlement Class and each Settlement Class member, as it results in recovery of the entire Surplus Proceeds attributable from the sale by Multnomah of the properties, plus interest. For these reasons the Settlement is clearly within the range of fairness and reasonableness required for final approval. Additionally, the Settlement Class satisfies all four of the requirements of Rule 23(a) and at least one basis for certification under Rule 23(b) and should be certified.

## BACKGROUND

### I.     Procedural History

Plaintiffs filed their initial Complaint in this action on October 12, 2023, against Multnomah, Lane and Yamhill Counties, making this the first class action seeking to recover Surplus Proceeds on behalf of former owners of tax-foreclosed properties in Oregon. ECF 1. After Defendants moved to dismiss, Plaintiffs filed a First Amended Complaint on February 26, 2024. ECF 37. On March 1, 2024, Plaintiffs filed a motion seeking to consolidate *Lynch* with *Sawyer v. Marion County et al.* (No. 3:23-cv-01971-IM) ("*Sawyer*"), another tax foreclosure case filed by Plaintiffs' counsel. ECF 44. On April 8, 2024, this Court granted that motion and designated *Lynch* as the lead case. ECF 65. On March 20, 2024, Defendant Lane County moved to dismiss the First Amended Complaint (ECF 54), which was later joined by Clackamas County (ECF 68) and Yamhill County (ECF 70). On July 19, 2024, Plaintiffs filed a motion seeking leave to file a consolidated amended complaint, which would include all the parties and claims in the *Lynch* and *Sawyer* actions. ECF 108.

On December 27, 2024, the Court entered an Order granting in part and denying in part the motion to dismiss and granting Plaintiffs' motion for leave to file a consolidated amended complaint. ECF 121. On January 17, 2025, Plaintiffs filed the First Amended Consolidated Complaint ("Complaint"). ECF 122. On January 27, 2025, Multnomah filed its answer to the First Amended Consolidated Complaint. ECF 123.[2] On February 27, 2025, the Court issued an order directing the parties to submit briefs regarding whether the Court should exercise supplemental jurisdiction over the state law claims asserted in the First Amended Consolidated Complaint. ECF 136. On March 13, 2025, Plaintiffs moved to consolidate *Lynch* and *Sawyer* with the related *Gabbert v. Josephine County* (Case No. 1:23-cv-01434-IM) ("*Gabbert*") and *Baker v. Baker County* cases (Case No. 2:24-cv-01503-IM) ("*Baker*"). ECF 140. On May 27, 2025, the Court granted the motion to consolidate *Lynch* and *Sawyer* with *Gabbert* and *Baker* and determining that the Court would exercise supplemental jurisdiction over Plaintiffs' state-law claims in *Lynch* and *Sawyer*. ECF 145.

## II.    Factual and Legal Background

Roberta and Calvin Queahpama owned a home at 2650 SE 101st Avenue in Portland (the "Queahpama Property"). Consol. Complaint, ECF 122, ¶ 21. Calvin Queahpama passed away intestate in 2008, and Roberta Queahpama passed away intestate in 2015. *Id*. ¶¶ 22–23. Roberta Queahpama's sole surviving heir was her son, Kyle Queahpama. *Id*. at ¶ 25. After Roberta's death in 2015, approximately $25,362.56 in property taxes, penalties, and associated fees had accumulated on the Queahpama Property. *Id*. ¶ 26. Multnomah foreclosed on the Queahpama Property and sold the Queahpama Property to Portlandia Construction LLC for $173,300 on

---

[2]    Plaintiffs filed the Corrected First Amended Consolidated Complaint on January 31, 2025. ECF 124.

October 12, 2020. *Id*. ¶ 28. Portlandia Construction LLC then sold the Queahpama Property for $457,500 in 2022. *Id*. Multnomah did not return the difference between the accumulated taxes, penalties and fees and the sale price, which amounted to approximately $147,937.44 to Kyle Queahpama, nor did it offer any process by which Kyle Queahpama could claim the surplus proceeds. *Id*. ¶¶ 29–31.

In *Tyler v. Hennepin Cnty., Minnesota*, 598 U.S. 631, 648 (2023) ("*Tyler*"), the Supreme Court considered whether it was unconstitutional for the government to retain the surplus proceeds from tax foreclosure sales—the same Oregon practice being challenged in this case. The Supreme Court unanimously held that retaining surplus proceeds violates the Fifth Amendment's Takings Clause when no opportunity to obtain the surplus is provided. *Id.* at 639–48. This lawsuit was filed to vindicate the rights (including those under the Fifth Amendment and the Oregon Constitution) of Oregonians under the Supreme Court's holding in *Tyler*.

III.    **Terms of the Settlement**

The Settlement is a common-fund settlement, which provides for payment of the $3,515,759.25 Settlement Amount by Multnomah into the Settlement Fund in consideration for a release of claims in this litigation. Settlement (Exhibit 1) ¶¶ 11, 35. The Settlement Amount was calculated by determining the total Surplus Proceeds for the Settlement Class Members, which equals $2,402,797.40, *id.* ¶ 11, plus interest at the pre-judgment statutory rate of 9 percent from the date of the expiration of the redemption period for each Eligible Property through the date of the Settlement Agreement, which equals $1,112,961.85. *Id*.

After the costs of notice, claims administration and approved attorneys' fees, litigation costs and expenses, and a service award to the Class representative are paid from the Settlement Fund, each Settlement Class Member that submits a valid and timely claim will be eligible for a

payment of up to the full amount of the Surplus Proceeds applicable to the Settlement Class Members' Eligible Property, plus accrued interest. *Id*. ¶ 14. In the event that the total amount of approved claims exceeds the amount available for distribution from the Settlement Fund, then all approved claims will be reduced pro-rata. *Id*. Under the Settlement, Plaintiffs' counsel have concurrently filed a motion with this Court for a fee award of 25 percent of the Settlement Fund. *Id*. ¶ 32. The costs of notice and claims administration, in an amount not to exceed $250,000, will be paid out of the Settlement Fund. *Id*. ¶ 14(a). Any remaining amount in the Settlement Fund after the above-described disbursements are made will be distributed first to reimburse Multnomah for any payments of Surplus Funds it makes to any Settlement Class Member that requests exclusion ("opt-outs") from the Class and is paid prior to the end of the claims period. Any funds remaining after that will be paid *cy pres* to fund housing placement and support services, rental assistance and/or development of new affordable housing for youth and families with children pursuant to ORS 275.275 and ORS 275.090, or such other programs as the parties agree and the Court approves in accordance with Oregon law. *Id*. ¶ 14(f).

Under the Settlement, the proposed Settlement Class is defined as follows:

> All Persons and entities, and their heirs, successors and assignees, who owned, or had an ownership interest in, or a valid lien on real property that Defendant Multnomah County obtained through a foreclosure action to satisfy unpaid real estate taxes or other County or local government taxes and fees and associated fees and penalties, which the County sold for an amount in excess of the unpaid taxes, fees and other costs associated with that property, and for which the statutory redemption period expired during the Class Period.

*Id*. ¶ 2. An "Eligible Property" is a parcel of real property foreclosed by Multnomah for the non-payment of real-property taxes or other County or local government taxes or fees, which was sold by the County for an amount in excess of the unpaid taxes, fees and other costs associated

Page 7 - PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT WITH DEFENDANT MULTNOMAH COUNTY

with that property, and for which the statutory redemption period expired during the Class Period. *Id.* ¶ 1(s). The "Class Period" is October 12, 2017, through the date of the Settlement Agreement. *Id.* ¶ 1(j).

Under the Settlement, the following persons and entities are excluded from the Settlement Class:

(i)    All governmental units and entities of any type whatsoever including, but not limited to, U.S. Department of Treasury, the Internal Revenue Service, the State of Oregon, and Multnomah County, albeit this provision does not apply to estate administrators who pursuing claims on behalf of a deceased Eligible Claimant's estate;

(ii)    All former holders of an interest in an Eligible Property as to which any Eligible Claimant has submitted a request to be excluded from the Class under the procedures set forth in the Class Notice that is accepted by the Court and which is not timely revoked;

(iii)    All former holders of an interest in an Eligible Property by reason of a lien to secure payment of a debt or judgment which debt or judgment    has since been satisfied or released; and

(iv)    All Potential Claimants who have already released their claim for Surplus Proceeds against Multnomah County through a settlement agreement, release or a final judicial judgment as to which there is no appeal pending and/or the time to appeal has expired. *Id.* ¶ 4(a)–(d).

Settlement Class Members have 180 days following preliminary approval of the Settlement to submit a completed Claim Form to the Claims Administrator. *Id.* ¶ 27. The Claim Form will require claimants to provide sufficient information for the Claims Administrator and the parties to assess whether the person submitting the claim is a Settlement Class Member. *Id.*

¶ 26. Further, "[a]s to each Claim asserting an unrecorded interest in an Eligible Property, the person submitting the claim shall be required to submit an affidavit or declaration setting forth all the factual and legal bases for the asserted unrecorded interest." *Id*. ¶ 29. Likewise, "[w]ith regard to claims of an interest in an Eligible Property through adverse possession, the affidavit or declaration shall set forth facts to show all of the elements of adverse possession under Oregon law." *Id*. In the event any Settlement Class Member disagrees with the Settlement, he or she may opt out of the Settlement Class or file an objection to its terms. *Id*. ¶¶ 4(b) and 8(d).

After the Claims Administrator receives Claims, it will determine which Claims are Eligible Claims, with assistance from the parties as necessary. *Id*. ¶ 29. Payments will then be made to Eligible Claimants from the Settlement Fund. *Id*. ¶ 14(d). For circumstances in which there are multiple Eligible Claims as to one property that cannot be resolved by the Claimants and/or the Claims Administrator, it is provided that Eligible Claimants can have a Special Master allocate the proceeds. *Id*. ¶ 30. The costs associated with the Special Master will be paid out of the Settlement Fund. *Id*. ¶ 14(b).

## **ARGUMENT**

Under Rule 23(e), court approval is required to settle a class action. "Approval under [Rule] 23(e) involves a two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted. *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004).

On July 16, 2025, the Court found that the Settlement Agreement preliminarily appeared to be fair, reasonable, and adequate and free of collusion, and likely to satisfy the prerequisites of Rules 23(a) and 23(b)(3). ECF 150, at ¶ 3. The Court also conditionally certified the class for

the purposes of settlement, appointed undersigned counsel as Class Counsel for the Settlement Class, and appointed Kroll Settlement Administration as Claims Administrator.  ECF 150, at ¶¶ 5, 7, 8.  Pursuant to this Court's preliminary approval order, notice was sent to the class.  Kroll Decl. ¶ 8–14.

At the final approval stage, the Court must determine whether the settlement class received appropriate notice and whether the settlement is fair, reasonable, and adequate.  Fed. R. Civ. P. 23(e)(2); *Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (describing the three-stage settlement approval process).  This Court has broad discretion to approve or reject a proposed settlement.  *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 942, 944 (9th Cir. 2015) (noting standard of review is "clear abuse of discretion" and emphasizing appellate court's review is "extremely limited").  When considering a motion for final approval of a class action settlement under Rule 23, the question is whether the settlement is "fundamentally fair."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1988).  A settlement merits final approval when "the interests of the class as a whole are better served by the settlement than by further litigation."  *Manual for Complex Litigation (Fourth)* § 21.61 (2015).

## I.      The Settlement should be finally approved as fair, reasonable, and adequate.

To approve a class action settlement, a court must find that the settlement is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e).  "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights."  *In re Syncor ERISA Litig.*, 516 F.3d 1096, 1100 (9th Cir. 2008).

When evaluating a proposed class settlement, courts consider (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the

Page 10 - PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT WITH DEFENDANT MULTNOMAH COUNTY

risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement. *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (citing *Churchill Village*, 361 F.3d at 575); *see also Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (same).

In addition to those factors, Rule 23(e) requires courts to consider: (A) whether the class representatives and class counsel have adequately represented the class; (B) whether the proposal was negotiated at arm's length; (C) whether the relief provided for the class is adequate, taking into account: the costs, risks, and delay of trial and appeal; the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; the terms of any proposed award of attorneys' fees, including timing of payment; and any agreement required to be identified under Rule 23(e)(3); and (D) whether the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2); *see also Magallon v. Robert Half Int'l Inc. (Magallon I)*, No. 6:13-cv-01478-SI, 2025 WL 1424248, at *3 (D. Or. May 7, 2025) ("[C]ourts in the Ninth Circuit 'put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution.'" (quoting *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009)).

Despite this "lengthy but non-exhaustive list of factors that a district court may consider when weighing a proposed settlement," "there are few, if any hard-and-fast rules about what makes a settlement 'fair' or 'reasonable.'" *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 895 F.3d 597, 610 (9th Cir. 2018). "The district court's task in reviewing a settlement is to make sure it is 'not the product of fraud or overreaching by, or

collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.' " *Id.* at 617 (quoting *Officers for Justice v. Civil Serv. Comm'n of City and Cnty. of San Fran.*, 688 F.2d 615, 625 (9th Cir. 1982)). "Deciding whether a settlement is fair is ultimately 'an amalgam of delicate balancing, gross approximations and rough justice,' best left to the district judge, who has or can develop a firsthand grasp of the claims, the class, the evidence, and the course of the proceedings—the whole gestalt of the case. Accordingly, 'the decision to approve or reject a settlement is committed to the sound discretion of the trial judge.' " *Id.* at 611 (citations omitted). There is, however, a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.' *Magallon I*, 2025 WL 1324248, at *3 (quoting *In re Hyundai & Kia Fuel Economy Litig.*, 926 F.3d 539, 556 (9th Cir. 2019)).

Consideration of the relevant factors and "the whole gestalt of [this] case" confirms that the parties' proposed settlement is fair, reasonable, and adequate.

### A.    The litigation strategy factors favor approval.

Courts often begin their analysis of final approval "by analyzing the litigation strategy focused factors—the strength of [the plaintiff's] case; the risk, expense, complexity, and likely duration of future litigation; and the risk of maintaining class action status through trial." *Magallon I*, 2025 WL 1324248, at *3; *see also In re Portland Gen. Elec. Sec. Litig.*, No. 3:20-cv-1583-SI, 2022 WL 844077, at *7 (Mar. 22, 2022); *Brinkmann v. ABM Onsite Servs.–West, Inc.*, No. 3:17-cv-0275-SI, 2021 WL 3932040, at *11 (D. Or. Sept. 2, 2011). Those factors favor approval here. The proposed settlement is the product of a thorough assessment and evaluation of the strengths and weaknesses of Plaintiffs' case compared to the benefit of the Settlement Class of obtaining recovery without further delay and risk. Although Plaintiffs believe they have

strong claims under *Tyler*, absent the settlement, Multnomah County would continue to contest the claims with attendant risks to Plaintiffs. The strength of Plaintiffs' claims is reflected in the settlement, which provides that eligible claimants may recover up to 100 percent of the Surplus Proceeds taken by the County, plus accrued interest.

Discovery in this case is ongoing, and no trial date has been set. Any judgment following trial, which would not be entered until 2026, at the earliest, may be subject to appeals and years of additional delay and risk. Accordingly, the Settlement reflects Plaintiffs' informed assessment of the risks generally inherent in litigation, and the specific risks at issue here.

Beyond that, the additional expense of litigation also supports approval. If this litigation were to continue, the expense of doing so would be significant—the parties would need to litigate additional complex motions (including class certification and summary judgment) and would potentially face the expense of trial and, quite possibly, an appeal. As Oregon courts have explained, the "high cost, the risk to the parties, and the added burden on the judiciary without a settlement" generally favor approval. *See Brinkmann*, 2021 WL 3932040, at *11.

**B.      The amount of the class settlement favors approval.**

"In considering the potential fairness of the recovery, courts often compare the total amount of recovery in a settlement to the estimated total amount of damages that could be recovered if the case was litigated." *Id.* (citing *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000)). In this case, the amount of the class settlement—$3,515,759.25—is an outstanding result for Settlement Class Members, representing 100 percent of the Surplus Proceeds held by Multnomah County, plus interest at the highest rate Plaintiffs could obtain in the litigation, without further risk to the Settlement Class, including risks presented by additional developments that could impact the claims, trial, and appeal. The settlement thus provides

Page 13 - PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT WITH DEFENDANT MULTNOMAH COUNTY

significant relief to the Settlement Class now, without further delay and expense. For these reasons, the amount of the class settlement favors approval.

Additionally, the remaining amount in the Settlement Fund after the above-described disbursements are made will be distributed first to reimburse Multnomah County for any payments of Surplus Proceeds it makes to any Settlement Class Member who requests exclusion ("opt-outs") from the Class and is paid prior to the end of the claims period. Any funds remaining after that will be paid *cy pres* to fund housing placement and support services, rental assistance and/or development of new affordable housing for youth and families with children pursuant to ORS 275.275 and ORS 275.090, or such other programs as the parties agree and the Court approves in accordance with Oregon law. Plaintiffs submit that the amount of the settlement is adequate and supports approval.

**C.    The extent of discovery completed favors approval.**

"Approval of a class action settlement is proper as long as discovery allowed the parties to form a clear view of the strengths and weaknesses of their cases." *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 454 (E.D. Cal. 2013); *see also Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239–40 (9th Cir. 1998) (formal discovery not required for approval of a class action settlement).

In Plaintiffs' extensive settlement discussions with Multnomah County, stretching over many months, the county produced complete documentation and data concerning all of the subject properties on which it foreclosed, and which it sold for more than the tax debt and other charges, resulting in a surplus. In this respect, the case is straightforward, and these documents and data were sufficient for Plaintiffs to confidently formulate a settlement demand from which to negotiate. In addition, Plaintiffs have obtained production of documents in discovery by other

Page 14 - PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT WITH DEFENDANT MULTNOMAH COUNTY

Defendants in the consolidated cases, allowing Plaintiffs to compare the quality and extent of the documents produced by Multnomah County in settlement discussions with those produced by other counties in discovery. Based on that benchmarking, Plaintiffs' counsel has a high degree of confidence that the Multnomah County records provide a full picture of both liability and damages in this case. Based on that their review of Multnomah County's contemporaneously created tax, foreclosure, property and sales records, the parties gained a thorough understanding of the strengths and weaknesses of their evidence, witnesses, and legal positions. This factor favors approval.

### D.    The experience and views of class counsel support approval.

"Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). But "[w]hile counsel's views are instructive, they do not entitle the settlement to a presumption of fairness." *Brinkmann*, 2021 WL 3932040, at *12 (citing *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019)).

Plaintiffs and their counsel recommend that the proposed settlement is fair, reasonable, adequate, and in the best interests of the Settlement Class Members. Class counsel in this case, who have substantial experience in litigation, trial, and appeal of class actions, strongly support the settlement. "Great weight" should be accorded to this recommendation of Class Counsel. *Bell v. Consumer Cellular, Inc.*, No. 3:15-cv-941-SI, 2017 WL 2672073, at *6 (D. Or. June 21, 2017); *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1044 (S.D. Cal. 2015). This factor also favors approval.

Page 15 - PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT WITH DEFENDANT MULTNOMAH COUNTY

**E.    The reaction of the Settlement Class Members favors approval.**

No Settlement Class Members have objected to the settlement or chosen to opt out at this time. The absence of objections and opt-outs shows that class members support the settlement. *See In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 320-21 (N.D. Cal. 2018) (low rates of objections and opt-outs are 'indicia of the approval of the class.' " (citation omitted)). This factor favors approval. Plaintiffs will update the court if they receive any timely objections or exclusions before the opt-out and objection deadline of November 3, 2025.

**F.    There is no evidence of collusion.**

When the settlement agreement is negotiated before formal class certification, a court should engage in "an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e)." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 946. As this Court has explained, "[t]he Ninth Circuit has identified three signs of collusion: (1) class counsel receives a disproportionate distribution of the settlement, or when the class receives no monetary distribution but counsel is amply awarded; (2) the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds without objection by a defendant; and (3) the parties arrange for payments not awarded to revert to a defendant rather than to be added to the class fund. *Magallon I*, 2025 WL 1324248, at *4 (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 947).

None of the three markers of collusion exists here: In this case, class counsel seek an attorneys' fee award of 25%, which is a reasonable percentage of the fund recovered for the Class under the standards in the Ninth Circuit. *See generally* Plaintiff's Motion for an Award of Attorneys' Fees, Reimbursement of Costs and Incentive Award to the Class Representative (filed concurrently herewith). The fee requested is not disproportionate to the amount of the

settlement, so the first sign is not present. Additionally, there is no "clear sailing" agreement to pay fees apart from class funds without objection by Multnomah County. Instead, Plaintiffs ask the Court to award the fee as a percentage of a common fund recovered for the Settlement Class. Therefore, the second sign is absent. Finally, there is no reversion or windfall to Multnomah County. The Settlement provides that all of the net Settlement Fund (after Court-approved attorneys' fees, expenses, incentive award, and costs of settlement administration) will be distributed to Settlement Class Members, except in the limited case of any opt-outs who negotiate and receive a settlement payment directly with Multnomah County, for which Multnomah County may be reimbursed. *See* Settlement, Exhibit 1 at ¶ 14 (e). Even if that had occurred, it would not be a windfall to the Multnomah County, merely reimbursement for actually compensating a putative Class Member who chose to opt out. This factor supports approval.

G.    **Rule 23(e)(2) considerations favor approval.**

The considerations outlined in Rule 23(e)(2) also support final approval of the settlement. Under Rule 23(e)(2), a district court considers whether (A) the class representatives and their counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided by the settlement is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief including the method of processing class-member claims, if required; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; (iv) any agreement required to be identified under Rule 23(e)(3) made in connection with the proposed settlement; and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

The first consideration, whether Plaintiff and class counsel have adequately represented the class, Fed. R. Civ. P. 23(e)(2)(A), supports approval. Kyle Queahpama is an adequate class representative because he suffered an unconstitutional taking of the surplus from the foreclosure sale of his family's property, in his case approximately $147,937.44. Since Multnomah County did not offer any process by which Mr. Queahpama could claim the surplus proceeds, and he suffered a taking, he is an adequate representative of the Settlement Class, whose members are all in the same boat. The Court found that "Class Counsel are well-qualified and experienced in class action litigation, and will fairly and adequately represent the Settlement Class." ECF 150, at ¶ 8. Class counsel has devoted a great deal of time and resources to representing Settlement Class Members and negotiating a favorable settlement of their claims. This consideration therefore supports approval.

The second consideration, whether the proposal was negotiated at arms' length, also supports approval. The parties' proposed settlement arises out of extended, informed, arms'-length negotiations between experienced counsel. Here, the parties have engaged in twenty months of litigation, have negotiated settlement over many months, beginning in February 2024 and continuing in May and June 2025, with the exchange of documents, data, and multiple drafts of the agreement, notices, and claim form. ECF 149, ¶¶ 3–6. There is also no evidence of conflicts of interest or collusion between or among the parties in crafting the proposed agreement. *Bell*, 2017 WL 2672073, at *7 (discussing the Ninth Circuit's "three signs of collusion"). *See also supra* Section I.F. The proposed method of allocation provides that the class representative is entitled to the same relief (*i.e.*, the full value of the Surplus Proceeds taken by the County, plus accrued statutory interest) as all other Settlement Class Members. Settlement ¶¶ 14(d), 32. Any fees awarded by this Court will be paid from the Settlement fund pursuant to a

motion for an award of attorneys' fees to be filed by Class Counsel.  There was no separately negotiated fee to be paid to the attorneys.  *Id.* ¶ 14(c).

The third consideration, whether the relief afforded is adequate, also supports settlement. As discussed above, the proposed settlement provides the benefit of $3,515,759.25, representing 100 percent of the Surplus Proceeds held by Multnomah County plus interest, and is more than adequate to warrant approval, particularly in light of the costs, risks and delay of trial and appeal.

Finally, the fourth consideration supports approval.  The distribution plan ensures that Settlement Class Members will be treated equitably relative to each other.  *See Radcliffe v. Hernandez*, 794 F. App'x 605, 607 (9th Cir. 2019) ("Rule 23's flexible standard allows for the unequal distribution of settlement funds so long as the distribution formula takes account of legitimate considerations and the settlement remains 'fair, reasonable, and adequate.' " (quoting Fed. R. Civ. P. 23(e)(2)), *cert. denied sub nom. Radcliffe v. Experian Info. Sols., Inc.*, 141 S. Ct. 87 (2020).  The proposed method of distribution is designed to compensate all Settlement Class Members proportionately based on the dollar amount Surplus Proceeds generated by the sale of the Eligible Property for which they submit a valid claim.  The class representative will not be favored or treated differently under that plan.  *See* Settlement ¶ 14. This consideration favors approval.  Further, this distribution plan has a reasonable and rational basis and weighs in favor of approval.[3]  *See In re Zynga Sec. Litig.*, 2015 WL 6471171, at *12 (N.D. Cal. Oct. 27, 2015)

---

[3]    Plaintiffs will move for a reasonable service award to be paid to the Settlement Class representative for his service to the class.  Any such award for which Plaintiffs move would be reasonable in relation to the average class member's recovery and will not be conditioned upon the Settlement Class representative's support for the Settlement.  Such an award is not disfavored in this district. *See, e.g.*, *Granados v. Onpoint Comm. Credit Union,* No. 3:21-cv-847-SI, 2025 WL 1640204, at *9 (D. Or. June 10, 2025) (noting that while the adequacy of class representatives may be undermined by "incentive awards that are contingent on the named representatives approving class settlement or by disproportionately large incentive awards," service award of $10,000 was appropriate); *Chahalem Phys. Therapy v. Coventry Health Care,*

Page 19 - PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT WITH DEFENDANT MULTNOMAH COUNTY

("[C]ourts recognize that an allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel.").

**II.     Settlement Class Members received the best notice practicable under the circumstances.**

The notice plan approved by the Court and implemented by Kroll also satisfied the requirements of Rule 23 and due process, providing Settlement Class Members the best notice practicable under the circumstances.  Rule 23 provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1).  When a class is certified under Rule 23(b)(3), the notice must also be the "best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  To comply with constitutional due process standards, the notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Cen. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

The Court-approved notice plan executed by Kroll satisfied these requirements.  It apprised Settlement Class Members of the nature of the case, the definition of the Settlement Class to be certified, the class claims and issues, and the claims that will be released.  Exhibit 3(A), at 1, 4–7.  It described the settlement and potential recovery for each claim made, that the parties disagreed regarding whether any damages were recoverable if the claims were brought to trial, and the purpose of the settlement.  *Id.* at 4–7.  It further identified the attorneys' fees

---

*Inc.*, No. 3:09-CV-00320-HU, 2014 WL 4373150, at *10 (D. Or. Sept. 3, 2014) (finding $10,000 incentive payments for class representative reasonable).

Page 20 - PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT WITH DEFENDANT MULTNOMAH COUNTY

provision, explained the claims process, and advised of the binding effect of a judgment on Settlement Class Members. *Id.* at 6–9.

The notice also explained to Settlement Class Members that they may enter an appearance through counsel, how they may opt out or object to the Settlement if desired, and how to submit a claim. *Id.* at 6–8. It included the names, addresses, telephone numbers, and website of the Claims Administrator and contact information for Lead Counsel. *Id.* at 8, 10. It identified the date, time, and location of the Final Approval Hearing, and how to check the status of that hearing in the event of any changes. *Id.* at 2, 9–10. Finally, it included the deadlines for submitting a Claim Form, any objections to the Settlement, the plan of allocation, or to the requested attorneys' fees and expenses. Id., at 2. In short, the notice's disclosures were thorough, and they satisfied the content requirements of Rule 23 and due process.

The Claims Administrator emailed or mailed the notice to all 119 identified potential Settlement Class Members. Kroll Decl. ¶¶ 3, 8–11. On August 29, 2025, Kroll emailed the notice to 87 potential Settlement Class Members for whom Kroll identified email addresses, and mailed notice to 112 potential Settlement Class Members for whom Kroll only identified physical addresses based on records provided by Multnomah County and the United States Postal Service's National Change of Address database. Kroll Decl. ¶¶ 8–11. In addition, Kroll published the Summary Notice via print and online media. Kroll Decl. ¶¶ 6, 14. Kroll also created a toll-free phone number and dedicated website for the Settlement. Kroll Decl. ¶¶ 6–7. The website contains, among other things, the Class Notices, Claim Forms, Settlement Agreement, Preliminary Approval Order, and a list of Eligible Properties. Kroll Decl. ¶ 6. The website also allows Settlement Class Members to contact the Claims Administrator with any questions or changes of address, provides answers to frequently asked questions, provides notice

of important dates, and allows class members to file a Claim Form online. *Id.*. Multnomah County and Class Counsel also established links on their websites to the settlement website. Kroll also commenced an online ad campaign that will run until October 2, 2025. *Id.* at ¶ 12. In addition, a press release was issued over PR Newswire's Oregon newsline. *Id.* at ¶ 13. The notices gave Settlement Class Members "enough information so that those with adverse viewpoints could investigate and come forward and be heard." *In re Hyundai and Kia Fuel Econ. Litig.*, 926 F.3d 539, 567–68 (9th Cir. 2019) ("settlement notices must 'present information about a proposed settlement neutrally, simply, and understandably' " (citation omitted)); *see also Lane*, 696 F.3d at 826 (class notice need only "generally describ[e] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard" (quoting *Rodriguez*, 563 F.3d at 962)).

Kroll is still implementing the online media ad campaign and receiving information regarding the reach of its notice program. Plaintiffs will update the Court with information regarding the reach of the notice program, as well as any objections or requests to opt-outs, once the notice program has been fully executed and the deadline for filing an objection or request to opt-out has passed.

Because the notice plan approved by the Court has been faithfully executed by Kroll and complies with Rule 23 and due process, the settlement should be approved.

## III. The Court Should Make a Final Determination That the Proposed Settlement Class Satisfies the Standard for Certification Under Rule 23.

To certify the proposed Settlement Class, the Settlement Class must satisfy all four of the requirements of Rule 23(a) and at least one basis for certification under Rule 23(b). *In re Hyundai*, 926 F.3d at 556.

A.    **The Rule 23(a) Requirements Are Met.**

i.    **The Settlement Class is so Numerous That Joinder is Impractical.**

The first requirement for maintaining a class action is that its members are so numerous that joinder would be "impracticable." Fed. R. Civ. P. 23(a)(1). This District follows the rule of thumb that "approximately forty members is sufficient to satisfy the numerosity requirement." *Villanueva v. Liberty Acquisitions Servicing, LLC*, 319 F.R.D. 307, 314 (D. Or. 2017). There is no hard and fast number, however, and "Plaintiffs need not provide an exact number of class members, 'so long as there are enough to make joinder impracticable.'" *Moss v. U.S. Secret Serv.*, No. 1:06–cv–3045–CL, 2015 WL 5705126, at *3 (D. Or. Sept. 28, 2015). Plaintiffs alleged that there are "hundreds" of class members affected by the conduct of Multnomah, Lane County, Clackamas County and Yamhill County. Consol. Complaint, ECF 122, ¶ 111. Kroll identified 40 Eligible Properties involved in the Settlement. Krol Decl. ¶ 3. Many (if not all) of the Eligible Properties may have more than one interest holder (and therefore more than one Class Member associated with the Eligible Property), the number of Class Members is almost certain to exceed 40 persons. The inclusion of lienholders in the Settlement Class further increases the likelihood that there are more than 40 persons with an interest in the 34 Eligible Properties. *See* Settlement ¶ 2. The Settlement Administrator identified 199 potential Settlement Class Members. Kroll Decl. ¶ 3.

ii.    **Common Issues Exist.**

Under Rule 23(a)(2), Plaintiffs must establish that there are "questions of law or fact common to the class." *Villanueva v. Liberty Acquisitions Servicing, LLC*, 319 F.R.D. at 315. The requirements of Rule 23(a)(2) have "been construed permissively." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011); *Moss*, 2015 WL 5705126, at *3.

Page 23 - PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT WITH DEFENDANT MULTNOMAH COUNTY

Accordingly, commonality is "a low hurdle easily surmounted." *Pecover v. Elec. Arts Inc.*, No. C 08–2820 VRW, 2010 WL 8742757, at \*13 (N.D. Cal. Dec. 21, 2010). "All questions of fact and law need not be common to satisfy the rule." *Ellis*, 657 F.3d at 981 (quotation marks omitted). Rather, commonality requires the existence of even a single common contention that is capable of class-wide resolution. *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011)). However, the common contention or contentions necessary to establish commonality must be "apt to drive the resolution of the litigation." *Id*.

Here, Plaintiffs have identified numerous common issues, including the following:

(a)    Whether Defendants' taking of Plaintiffs' and the class members' properties for public use without "compensation first assessed and tendered" violated Art. I, § 18 of the Oregon Constitution;

(b)    Whether ORS 275.275 violates Art. I, § 18 of the Oregon Constitution; and

(c)    Whether Defendants should be enjoined from enforcing ORS 275.275.

Consol. Complaint, ECF 122, ¶ 112. Resolution of these common issues would determine the allegations for the entire Class "in one stroke." *Hurst v. First Student, Inc.*, No 3:15-cv-00021-HZ, 2015 WL 6437196, at \*3 (D. Or. Oct. 22, 2015) (quoting *Jimenez*, 765 F.3d at 1165). The commonality requirement is therefore satisfied.

### iii.    The Settlement Class Representative's Claims Are Typical of Those of The Other Settlement Class Members.

The third requirement is that the "claims . . . of the representative parties are typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same

Page 24 - PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT WITH DEFENDANT MULTNOMAH COUNTY

course of conduct.' " *Ellis*, 657 F.3d at 984 (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)); *Hurst*, 2015 WL 6437196, at *3; *Freedman v. Louisiana-Pacific Corp.*, 922 F. Supp. 377, 399 (D. Or. 1996). "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Ellis*, 657 F.3d at 984 (quotation marks omitted).

Like commonality, typicality is to be construed permissively: "[u]nder the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020; *see also Sullivan v. Kelly Servs.*, 268 F.R.D. 356, 363 (N.D. Cal. 2010). The "focus should be on the defendants' conduct and plaintiff's legal theory, not the injury caused to the plaintiff." *Costelo v. Chertoff*, 258 F.R.D. 600, 608 (C.D. Cal. 2009) (quoting *Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391, 396 (N.D. Cal. 2005)). This requirement is "to assure that the interest of the named representative aligns with the interests of the class." *Hanon*, 976 F.2d at 508.

The claims asserted by the Settlement Class Representative, Kyle Queahpama, as heir to the estate of Roberta Queahpama, are typical of those of the Settlement Class. Plaintiffs allege that the Queahpama Property was foreclosed upon by Multnomah for non-payment of property taxes and that Multnomah sold the property and retained the Surplus Proceeds without affording the Queahpamas any procedure by which they could recover the Surplus Proceeds. Consol. Complaint, ECF 122 ¶¶ 20–31. This is the same injury that Plaintiffs allege that Multnomah caused other members of the Settlement Class. Complaint, ECF 122 ¶ 109. His claim is therefore typical of the Settlement Class.

Page 25 - PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT WITH DEFENDANT MULTNOMAH COUNTY

### iv.    The Settlement Class Representative and Class Counsel Can Adequately Represent the Class.

The final requirement of Rule 23(a) is that the representative plaintiffs will fairly and adequately represent the interests of the Class.  The relevant inquiries are "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis*, 657 F.3d at 985 (quoting *Hanlon*, 150 F.3d at 1020).  There are no conflicts between the Class Representative or Class Counsel, on the one hand, and the Settlement Class on the other. The interests of all Settlement Class Members are aligned in obtaining the greatest possible recovery against Defendants.  Kyle Queahpama has engaged Class Counsel, furnished them with the requisite factual information supporting his claim, approved the filing of the Complaint, worked with Class Counsel to vigorously prosecute this case, and gone the distance by pursuing this action through the present settlement stage of the case.  As set forth above, Class Counsel are experienced class action litigators and have capably represented the Class.  Therefore, the Settlement Class Representative and Class Counsel can adequately represent the interests of the Settlement Class.

### B.    The Rule 23(b)(3) Requirements For a Settlement Class Are Met.

A class may be certified under Rule 23(b)(3) when: (a) "questions of law or fact common to the class members predominate over any questions affecting only individual members"; and (b) the class action mechanism is "superior" to other methods of adjudicating the controversy. Fed. R. Civ. P. 23(b)(3).  Both requirements are satisfied here.

### i.    Common Questions of Law or Fact Predominate.

"The predominance inquiry . . . asks 'whether proposed classes are sufficiently cohesive to warrant adjudication by representation.' "  *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1019

Page 26 - PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT WITH DEFENDANT MULTNOMAH COUNTY

(9th Cir. 2011), *abrogated on other grounds by Comcast Corp. v. Behrend*, 569 U.S. 27 (2013). "The focus is on the relationship between the common and individual issues." *Id*. (quotation marks omitted). To ensure that the class action is more efficient than individual actions, Rule 23(b)(3) requires that common issues predominate over issues that are particular to individual class members. "Predominance exists 'when common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication.' " *Moss*, 2015 WL 5705126, at *4 (quoting *Hanlon*, 150 F.3d at 1022).

Rule 23(b)(3) requires only a showing that questions common to the class predominate, and a plaintiff seeking class certification is not required to prove the answers to such questions will favor the class. *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 468 (2013) ("In other words, they need not, at that threshold, prove that the predominating question will be answered in their favor."). Predominance does not require a plaintiff to show a complete absence of individual issues. Rather, the predominance inquiry "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quotation marks omitted). "Predominance is not a matter of nose-counting," and "more important questions apt to drive the resolution of the litigation are given more weight in the predominance analysis over individualized questions which are of considerably less significance to the claims of the class." *Torres v. Mercer Canyons Inc*., 835 F.3d 1125, 1134 (9th Cir. 2016).

The common questions of fact and law affecting the Settlement Class predominate over the individual issues. The primary common question of law is whether Multnomah violated the law when it took the Surplus Proceeds associated with Settlement Class Members' properties without providing any means of recovering the Surplus Proceeds. Resolution of that issue for the

Page 27 - PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT WITH DEFENDANT MULTNOMAH COUNTY

Settlement Class Representative would settle that question for all Settlement Class Members. The only individualized issues that are likely to arise are (1) the calculation of the Surplus Proceeds associated with each Eligible Property; and (2) whether there are any unique defenses that may apply to individual Settlement Class Members. The first question can easily be resolved using publicly available information regarding the property taxes owed, the proceeds of any sale by the County and the assessed taxable value for the property. This mechanical process has already been done by Multnomah. As to the second issue, there may be Settlement Class Members against whom Multnomah may have unique defenses. However, those issues do not predominate over the central issue in the case—whether Multnomah violated the law when it took Settlement Class Members' Surplus Proceeds.

### ii. The Class Action Mechanism is Superior to Other Methods of Adjudication.

Rule 23(b)(3) also requires that the Court determine whether a class action is superior to other methods of adjudication. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022; *see also Fosbre v. Las Vegas Sands Corp.*, 2015 WL 3722496, at *5 (D. Nev. June 15, 2015) ("It is preferable to determine these common questions once, rather than a multitude of times or not at all if the small value of individual recoveries would deter any single plaintiff from bringing suit."). Additionally, "[a] class action is generally superior if it will greatly reduce litigation costs." *O'Shea v. Am. Solar Solutions, Inc.*, 318 F.R.D. 633, 639 (S.D. Cal. 2017). The superiority requirement is satisfied here because there are significant common issues (*e.g.*, whether Multnomah violated the Oregon Constitution by taking Surplus

Page 28 - PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT WITH DEFENDANT MULTNOMAH COUNTY

Equity) that can be most efficiently resolved on a class-wide basis, thereby greatly reducing litigation costs.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs ask that the Court enter an Order in the form submitted herewith and agreed to by the settling parties granting final approval to the Settlement and certification of the Settlement Class, appointing Kyle Queahpama as heir of the Estate of Roberta Queahpama as the class representative for the Settlement Class; and appointing Fink Bressack; Kohn, Swift & Graf, P.C.; and Preti, Flaherty, Beliveau & Pachios, Chartered, LLP as Lead Counsel and Sugerman Dahab as Liaison Counsel for the Settlement Class.

DATED this 9th day of September, 2025.

/s/ Joseph C. Kohn

**Joseph C. Kohn**
(admitted *pro hac vice*)
**William Hoese**
**Zahra R. Dean** (admitted *pro hac vice*)
KOHN SWIFT & GRAF, P.C.
1600 Market Street, Suite 2500
Philadelphia, PA 19103
Tel: (215) 238-1700
jkohn@kohnswift.com
zdean@kohnswift.com
whoese@kohnswift.com

*Proposed Lead and Class Counsel for Plaintiffs*

**David H. Fink**
**Nathan J. Fink** (admitted *pro hac vice*)
**David A. Bergh**
FINK BRESSACK
38500 Woodward Avenue, Suite 350
Bloomfield Hills, MI 48304
Tel: (248) 971-2500
dfink@finkbressack.com
nfink@finkbressack.com
dbergh@finkbressack.com

**David F. Sugerman**, OSB No. 862984
**Nadia H. Dahab**, OSB No. 125630
SUGERMAN DAHAB
101 SW Main Street Ste. 910
Portland, OR 97204
Tel: (503) 228-6474
david@sugermandahab.com
nadia@sugermandahab.com

*Proposed Liaison and Class Counsel for Plaintiffs*

**Gregory P. Hansel,** (admitted *pro hac vice*)
**Shana M. Solomon**
**Elizabeth F. Quinby,** (admitted *pro hac vice*)
**Michael D. Hanify**
**Kat Mail** (admitted *pro hac vice*)
PRETI FLAHERTY BELIVEAU
& PACHIOS, CHARTERED, LLP
One City Center
P.O. Box 9546
Portland, ME 04112
Tel: (207)791-3000
ghansel@preti.com
ssolomon@preti.com

Page 29 - PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT WITH DEFENDANT MULTNOMAH COUNTY

*Proposed Lead and Class Counsel for
Plaintiffs*

equinby@preti.com
mhanify@preti.com
kmail@preti.com

*Proposed Lead and Class Counsel for
Plaintiffs*