UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| **MARTIN LYNCH, et al.**, | |
| Plaintiffs, | Case No. 3:23-cv-01502-IM (lead case) |
| v. | |
| **MULTNOMAH COUNTY, et al.**, | **OPINION AND ORDER DENYING *GABBERT* DEFENDANTS' MOTION TO DISMISS THIRD AMENDED CLASS ACTION COMPLAINT PURSUANT TO RULE 12(B)(6)** |
| Defendants. | |
| **JEFFREY SAWYER, et al.**, | |
| Plaintiffs, | Case No. 3:23-cv-01971-IM |
| v. | |
| **MARION COUNTY, et al.**, | |
| Defendants. | |
| **MATTHEW GABBERT, et al.**, | |
| Plaintiffs, | Case No. 1:23-cv-01434-IM |
| v. | |
| **JOSEPHINE COUNTY, et al.**, | |
| Defendants. | |

|  |  |
|---|---|
| **JERRY BAKER**, | Case No. 2:24-cv-01503-IM |
| Plaintiff, | |
| v. | |
| **BAKER COUNTY**, | |
| Defendant. | |

**IMMERGUT, District Judge.**

Before this Court is the motion to dismiss Plaintiffs' Third Amended Complaint ("TAC") brought by the defendants[1] in *Gabbert v. Josephine County*, 1:23-cv-01434-IM (hereinafter "Defendants"). Plaintiffs are former tax delinquent property owners alleging that Defendants violated the federal and Oregon constitutions by retaining a surplus in their foreclosed properties worth more than the amount of tax debt owed. Defendants move to dismiss with prejudice the TAC ("Mot."), ECF 106. Defendants argue that this Court must dismiss Plaintiffs' (1) federal Takings Clause claim and (2) Oregon Takings Clause claim because the counties acted as required by state law. For the reasons set forth below, the motion is denied.

## LEGAL STANDARDS

A court may dismiss a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level" and to state a "claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

---

[1] On January 2, 2026, this Court held the present motion in abeyance at the parties' request. Order, ECF 141. On April 14, 2026, Defendants Klamath and Josephine Counties requested that this Court lift the hold on this motion and decide it. Joint Response to Scheduling Order, ECF 161 at 2.

PAGE 2 – OPINION AND ORDER DENYING MOTION TO DISMISS

*Twombly*, 550 U.S. 544, 555, 570 (2007). That means the "factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* If a plaintiff cannot "nudge[] the[] claim across the line from conceivable to plausible, the complaint must be dismissed." *Twombly*, 550 U.S. at 570. At this stage, the court must accept as true all factual allegations, *Dowers v. Nationstar Mortg., LLC*, 852 F.3d 964, 969 (9th Cir. 2017), draw all reasonable inferences in favor of the non-moving party, *id.*, and take care to "examine the allegations of the complaint as a whole," *Khachatryan v. Blinken*, 4 F.4th 841, 854 (9th Cir. 2021).

## BRIEF BACKGROUND

This Court assumes the parties are familiar with the background of this case, which is set out in this Court's Opinion and Order Granting in Part and Denying in Part Defendants' Motions to Dismiss, ECF 31. *See* ECF 71 at 6–8. There, this Court largely denied the motions and only dismissed some of the claims as untimely. *Id.* at 26–32. This Court granted Plaintiffs leave to amend. *Id.* at 36–37. On January 17, 2025, Plaintiffs filed the Second Amended Complaint ("SAC"). ECF 72. Defendants answered the SAC on February 17, 2025. ECF 73. On September 10, 2025, Plaintiffs filed the TAC. ECF 100. The TAC made minor changes and added a plaintiff but did not add any new claims or substantially change the allegations.

## DISCUSSION

This Court first addresses Defendants' argument that Plaintiffs' federal Takings Clause claim must be dismissed because the counties enforced mandatory state law. This Court concludes that because the counties had alternatives available, Plaintiffs can bring claims against the counties. Then, this Court addresses Defendants' argument that Plaintiffs' Oregon Takings

PAGE 3 – OPINION AND ORDER DENYING MOTION TO DISMISS

Clause claim must be dismissed because Defendants lacked the requisite intent. This Court concludes that under Plaintiffs' theory, the counties intentionally authorized the alleged takings sufficient to state a claim under the Oregon Constitution.

## A.  Federal Takings Claim

Defendants move to dismiss on the theory that the TAC does not state a claim against the counties because "Plaintiffs allege nothing more than that the Counties complied with mandatory state law." Mot., ECF 106 at 6. Plaintiffs' theory of liability was that Defendants had "longstanding polic[ies] of seizing properties that have unpaid tax debts, selling them for substantially more than the money owed, and keeping the profits" without just compensation. TAC, ECF 72 ¶ 1.

As Defendants note, municipalities may be held liable for constitutional violations under the framework of *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978), if a plaintiff's injuries were "caused by a municipal policy or custom." Mot., ECF 106 at 5 (quoting *Los Angeles County v. Humphries*, 562 U.S. 29, 31 (2010)). Defendants cite *Benavidez v. County of San Diego*, 993 F.3d 1134 (9th Cir. 2021) for the proposition that any municipal policy or custom need be a "deliberate choice to follow a course of action . . . made from among various alternatives." Mot., ECF 106 at 5 (quoting *Benavidez*, 993 F.3d at 1153). Defendants argue that Oregon law prior to June 6, 2024, O.R.S. § 275.275, "undisputably required the Counties to distribute surplus proceeds to government entities and not to a former owner," and therefore, the counties "merely carried out mandatory state law and therefore did not act on an official county policy." Mot., ECF 106 at 6–7.

To establish municipal liability under *Monell*, there must be "a direct causal link between a municipal policy or custom and the alleged unconstitutional deprivation." *Castro v. County of Los Angeles*, 833 F.3d 1060, 1075 (9th Cir. 2016) (en banc) (quoting *City of Canton v. Harris*,

PAGE 4 – OPINION AND ORDER DENYING MOTION TO DISMISS

489 U.S. 378, 385 (1989)). Some courts have gone as far as to suggest that municipalities can be held liable for enforcing a mandatory state law. *See Brewster v. City of Los Angeles*, 672 F. Supp. 3d 872, 989 (C.D. Cal. 2023) (collecting cases) ("Applying *Evers*[*v. County of Custer*, 745 F.2d 1196 (9th Cir. 1984)], a number of Ninth Circuit district court decisions have found municipalities could be liable for actions taken pursuant to state statutes."); *Miranda-Olivares v. Clackamas County*, No. 3:12-cv-02317-ST, 2014 WL 1414305, at *4 n.5 (D. Or. Apr. 11, 2014) ("[E]ven if a municipality enforces a mandatory, but unconstitutional, state or federal law, *Monell* liability may attach even though the municipality does not know that the statute is unconstitutional."). However, the Ninth Circuit has held that the municipal custom or policy must at least be a "deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible." *Castro*, 833 F.3d at 1075 (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) (plurality op.)).

Here, Defendants were not required by state law to "seiz[e] properties that have unpaid tax debts, selling them for substantially more than the money owed, and keeping the profits" without just compensation. TAC, ECF 72 ¶ 1. Defendants point to the mandatory duties of counties in O.R.S. § 275.275, effective prior to June 6, 2024, that "if the county sells the property, the proceeds must be distributed to the county or local government according to the provisions set out in ORS 275.275. That statute does not include a provision allowing funds to be distributed to a former property owner." *W. States Land Reliance Tr. v. Linn Cnty.*, 343 Or. App. 280, 290, (2025), *review allowed*, 374 Or. 437 (2025) (concluding that "Oregon's statutory scheme is similar to Minnesota's such that *Tyler* controls"); *see* Mot., ECF 106 at 6. Defendants had "various alternatives" available to compensate Plaintiffs for the lost equity while complying with state law. *Castro*, 833 F.3d at 1170 (citation modified). Plaintiffs point to several alternative

PAGE 5 – OPINION AND ORDER DENYING MOTION TO DISMISS

paths[2] that the counties could have taken prior to June 6, 2024. For example, Plaintiffs contend that under Oregon law, counties "were authorized to sell the properties to a government entity or Indian tribe under O.R.S. § 275.070(1), sales to which O.R.S. § 275.275's distribution rules expressly do not apply." Opp'n, ECF 120 at 20. Defendants do not challenge this reading of the statute in their reply brief. Plaintiffs also point out[3] that Defendants could have compensated Plaintiffs for the lost equity by "return[ing] Plaintiffs' surpluses from county funds." Opp'n, ECF 120 at 20. After the U.S. Supreme Court issued its decision in *Tyler*, but before the Oregon legislature changed the law in June 2024, several Oregon counties (e.g., Multnomah) *did* begin compensating property owners. *Id.* at 20–21. Defendants do not specifically reply to this point. *See* Reply, ECF 123. Plaintiffs' injury under the Fifth Amendment is that they were denied "just compensation." U.S. Const. amend. V. If Defendants provided Plaintiffs with just compensation from another funding source, as Multnomah County began doing in late 2023, Plaintiffs would not have a claim.

In their motion, Defendants rely on *Wilkins v. Herron*, No. 24-80, 2024 WL 5200177 (9th Cir. Dec. 23, 2024), *cert. denied*, No. 25-9, 2025 WL 2824087 (U.S. Oct. 6, 2025), which was issued four days before this Court issued its order granting in part and denying in part

---

[2] Plaintiffs also argue that Defendants could have not initiated foreclosure proceedings at all, and therefore, would not have "'set in motion a series of acts' that foreseeably resulted in constitutional violations." Opp'n, ECF 120 at 19 (quoting *Sinclair v. City of Seattle*, 61 F.4th 674, 680 n.3 (9th Cir. 2023) (citation modified)). Defendants thoroughly contest this reading of Oregon law. Reply, ECF 123 at 4–6. Because there were other alternatives available, this Court declines to address whether initiating foreclosure proceedings in the first place was mandated by Oregon law in this context.

[3] Plaintiffs also raise this point, that "nothing in ORS chapter 312 prohibits a county from refunding the surplus," in a footnote in their Response in Opposition to Defendants' first Motion to Dismiss. ECF 35 at 5 n.2.

PAGE 6 – OPINION AND ORDER DENYING MOTION TO DISMISS

Defendants' Motions to Dismiss the First Amended Complaint,[4] ECF 71. Mot., ECF 106 at 5–6. In an unpublished opinion, the Ninth Circuit upheld Judge Aiken's dismissal of a *Monell* claim against a municipal entity in Oregon. *Wilkins*, 2024 WL 5200177 at *2. There, a former teacher sued a school district over its enforcement of COVID-19 vaccine and mask mandates. *Id.* The Court found that the school district could not be held liable because it was "bound by state law to enforce these mandates." *Id.* at *2. This case is distinguishable. In *Wilkins*, the municipal entities were required by law to proactively enforce vaccine and mask mandates for school employees. *Id.* at *1. A claim based on lost funds is different from a claim based on enforcement of employment requirements. Defendants were not bound by Oregon law to never compensate homeowners for lost equity. As discussed above, Defendants had alternatives available. Therefore, this Court finds that, under Plaintiffs' theory of the case, Defendants enacted a policy to violate Plaintiffs' constitutional rights despite various alternatives.

## B. Oregon Takings Claim

Second, Defendants argue that Plaintiffs' claim under the Takings Clause of the Oregon Constitution, *see* Or. Const. art. I, § 18, must be dismissed. Defendants argue they did not "intentionally authorize" the alleged taking. Mot., ECF 106 at 4. Defendants argue that they only "perform[ed] the ministerial acts required of them by a compulsory statute." *Id.*

Under the Oregon Constitution, a taking occurs "when government has intentionally authorized a physical occupation of private property that substantially has interfered with the owner's rights of exclusive possession and use." *Dunn v. City of Milwaukie*, 355 Or. 339, 348, 359 (2014) (holding that negligent conduct cannot be the basis of an Oregon takings claim).

---

[4] Defendants did not move to dismiss the Second Amended Complaint, ECF 72. *See* Answer to Second Amended Complaint, ECF 73 (filed Jan. 17, 2025).

PAGE 7 – OPINION AND ORDER DENYING MOTION TO DISMISS

Defendants rely on a case from the Oregon Court of Appeals that held there was no taking because the defendant's "goal" "d[id] not constitute a public use sufficient to support an inverse condemnation claim under Article 1, section 18, of the Oregon Constitution." *Mossberg v. Univ. of Oregon*, 240 Or. App. 490, 501 (2011); Mot. ECF 106 at 7. However, the facts of *Mossberg* are distinguishable. There, a plaintiff brought a takings claim alleging that the university intentionally disassembled a professor's laboratory equipment, decreasing its monetary value, with the intent of making room for other faculty. *Id.* at 498–502. The question was whether the university had the *mens rea* of purposefully depriving an individual of property.

Here, there is no question that Defendants sold the properties in order to receive funds from their sales. And as discussed above, Defendants had alternatives available under Oregon law. Thus, Defendants "intentionally authorized" the alleged takings. Plaintiffs therefore state a claim under the Oregon Constitution.

**CONCLUSION**

Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint, ECF 106, is DENIED.

**IT IS SO ORDERED.**

DATED this 8th day of May, 2026.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge

PAGE 8 – OPINION AND ORDER DENYING MOTION TO DISMISS