Michael Zhang (OSB No. 185180)
Qiu-Qiu Law
5020 Martin Luther King Blvd., Suite S
Portland, Oregon 97211
michael@qiu-qiulaw.com
908-938-6683

Attorney for *Gabbert* and *Baker* Plaintiffs
Additional Attorneys Listed on Next Page

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION**

| | |
|---|---|
| MARTIN LYNCH, et al.,<br><br>                    Plaintiffs,<br><br>        v.<br><br>MULTNOMAH COUNTY, et al.,<br><br>                    Defendants. | Case No. 3:23-cv-01502-IM (lead case)<br><br>**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT WITH DEFENDANTS BAKER, COLUMBIA, JACKSON, AND MARION COUNTIES**<br><br>Oral Argument Requested |
| JEFFREY SAWYER, et al.,<br><br>                    Plaintiffs,<br><br>        v.<br><br>MARION COUNTY, et al.,<br><br>                    Defendants. | Case No. 3:23-cv-01971-IM |
| MATTHEW GABBERT, et al.,<br><br>                    Plaintiffs,<br><br>        v.<br><br>JOSEPHINE COUNTY, et al.,<br><br>                    Defendants. | Case No. 1:23-cv-01434-IM |

JERRY BAKER,

                    Plaintiff,

          v.

BAKER COUNTY,

                    Defendant.

Case No. 2:24-cv-01503-IM

Akeeb Dami Animashaun
355 S. Grand Ave., Suite 2450
Los Angeles, California 90071
dami@animashaun.me
929-266-3971

Jacob Loup
Law Office of Jacob Loup
400 Corporate Pointe, Suite 300
Culver City, California 90230
jl@louplaw.com
347-391-5009

Shakeer Rahman
Law Office of Shakeer Rahman
3435 Wilshire Blvd., Suite 2910
Los Angeles, California 90010
shakeer@loosr.net
323-546-9236

Plaintiffs' Motion for Final Approval of Proposed Class Action Settlement with
Defendants Baker, Columbia, Jackson, and Marion Counties

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................ v

LOCAL RULE 7-1 CERTIFICATION ............................................................... 1

MOTION ............................................................................................................ 1

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT ..................................................................... 2

INTRODUCTION ............................................................................................. 2

RELEVANT FACTUAL AND PROCEDURAL BACKGROUND .............................. 4

    A.    The considerable litigation that preceded the Settlement
        Agreement ............................................................................ 4

    B.    Terms of the Settlement Agreement ....................................... 7

    C.    The order preliminarily approving the Settlement and the
        commencement of the notice procedures ............................... 10

ARGUMENT ..................................................................................................... 11

    The Court should approve the Settlement as fair, adequate, and
    reasonable; deem the notice provided to Class Members adequate; and
    certify the Settlement Class. ............................................................ 11

    A.    General principles governing final approval of a class action
        settlement ........................................................................... 11

    B.    The proposed Settlement is fair, adequate, and reasonable. .............. 12

        1.    Governing legal standards ......................................... 12

        2.    Class Counsel and the class representatives have
            adequately represented the class (Rule 23(e)(2)(A)). ................. 14

        3.    The proposed Settlement was negotiated at arm's length
            (Rule 23(e)(2)(B)). ....................................................... 15

        4.    The relief provided for the class is adequate (Rule
            23(e)(2)(C)). ................................................................ 18

        5.    The Settlement treats Class Members equitably relative
            to each other (Rule 23(e)(2)(D)). ..................................... 20

        6.    The presence of governmental participants favors
            approval. ..................................................................... 22

Plaintiffs' Motion for Final Approval of Proposed Class Action Settlement with
Defendants Baker, Columbia, Jackson, and Marion Counties

   7. The reaction of Class Members favors approval. ....................... 22

  C. The notice provided to Class Members is adequate............................. 22

  D. The proposed Settlement satisfies the standards for certifying a class under Rules 23(a) and (b)............................................................ 23

   1. The class is so numerous that joinder of all members is impracticable (Fed. R. Civ. P. 23(a)(1)).................................... 23

   2. There are questions of law or fact common to the class (Fed. R. Civ. P. 23(a)(2)). .......................................... 24

   3. The claims or defenses of the representative parties are typical of the claims or defenses of the class (Fed. R. Civ. P. 23(a)(3))................................................................ 25

   4. The representative parties will fairly and adequately protect the interests of the class (Fed. R. Civ. P. 23(a)(4)). ....... 26

   5. The proposed class satisfies the requirements of Rule 23(b)(3). .................................................................... 26

CONCLUSION................................................................................................. 28

Plaintiffs' Motion for Final Approval of Proposed Class Action Settlement with
Defendants Baker, Columbia, Jackson, and Marion Counties

## TABLE OF AUTHORITIES

**Cases**

*Abdullah v. U.S. Sec. Assocs., Inc.*,
731 F.3d 952 (9th Cir. 2013) ................................................................................ 24

*Allen v. Bedolla*,
787 F.3d 1218 (9th Cir. 2015) ............................................................................. 11

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ...................................................................................... 14, 26

*Bell v. Consumer Cellular, Inc.*,
No. 3:15-cv-941-SI, 2017 WL 2672073 (D. Or. June 21, 2017) ............................. 18

*Brinkmann v. ABM Onsite Servs. – W., Inc.*,
No. 3:17-CV-275-SI, 2021 WL 3932040 (D. Or. Sept. 2, 2021) ....................... 17, 19

*Briseño v. Henderson*,
998 F.3d 1014 (9th Cir 2021) .............................................................................. 17

*Campbell v. Facebook, Inc.*,
951 F.3d 1106 (9th Cir. 2020) ............................................................................. 17

*Carlin v. DairyAmerica, Inc.*,
380 F. Supp. 3d 998 (E.D. Cal. 2019) ................................................ 11, 12, 14, 23

*Chehalem Physical Therapy v. Coventry Health Care, Inc.*,
No. 3:09-cv-00320-HU, 2014 WL 4373150 (D. Or. Sept. 3, 2014) ......................... 21

*Cmty. Res. for Indep. Living v. Mobility Works of California, LLC*,
533 F.Supp.3d 881 (N.D. Cal. 2020) .................................................................... 15

*Dunsmore v. San Diego Cnty. Sheriff's Dep't*,
No. 20-CV-00406-AJB-DDL, 2025 WL 2210186 (S.D. Cal. Aug. 4, 2025)........ 18, 22

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011) ................................................................... 15, 24, 25

*Fitzgerald v. Pollard*,
No. 20CV848 JM(MSB), 2024 WL 4596401 (S.D. Cal. Oct. 28, 2024) ............. 18, 22

*Fosbre v. Las Vegas Sands Corp.*,
No. 2:10-cv-00765-APG-GWF, 2015 WL 3722496 (D. Nev. June 15, 2015)........... 28

v

Plaintiffs' Motion for Final Approval of Proposed Class Action Settlement with
Defendants Baker, Columbia, Jackson, and Marion Counties

*Gen. Tel. Co. of Sw. v. Falcon,*
  457 U.S. 147 (1982) ................................................................................ 14, 26

*Granados v. OnPoint Community Credit Union,*
  No. 3:21-cv-847-SI, 2025 WL 1640204 (D. Or. June 10, 2025) .............................. 21

*Hanlon v. Chrysler Corp.,*
  150 F.3d 1011 (9th Cir. 1998) ....................................... 12, 13, 15, 18, 28

*Hanon v. Dataproducts Corp.,*
  976 F.2d 497 (9th Cir. 1992) ............................................................ 25

*Hurst v. First Student, Inc.,*
  No 3:15-cv-00021-HZ, 2015 WL 6437196 (D. Or. Oct. 22, 2015) ......................... 25

*In re Anthem, Inc. Data Breach Litig.,*
  327 F.R.D. 299 (N.D. Cal. 2018) ...................................................... 22

*In re Bluetooth Headset Prods. Liab. Litig.,*
  654 F.3d 935 (9th Cir. 2011) ...................................................... 16, 17

*In re California Pizza Kitchen Data Breach Litig.,*
  129 F.4th 667 (9th Cir. 2025)......................................... 12, 13, 15, 16, 17

*In re Google LLC St. View Elec. Commc'ns Litig.,*
  611 F. Supp. 3d 872 (N.D. Cal. 2020) .................................................. 14

*In re Tableware Antitrust Litig.,*
  484 F.Supp.2d 1078 (N.D. Cal. 2007) .............................................. 15, 20

*Jimenez v. Allstate Ins. Co.,*
  765 F.3d 1161 (9th Cir. 2014) ...................................................... 24, 25

*Kelly v. Aramark Servs., Inc.,*
  815 F. Supp. 3d 1043 (N.D. Cal. 2025) .................................. 14, 16, 17, 19, 26–28

*Lane v. Brown,*
  166 F. Supp. 3d 1180 (D. Or. 2016) .................................................. 18, 22

*Lane v. Facebook, Inc.,*
  696 F.3d 811 (9th Cir. 2012) ...................................................... 12

*Leyva v. Medline Indus. Inc.,*
  716 F.3d 510 (9th Cir. 2013) ...................................................... 27

*Loc. Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.,*
  244 F.3d 1152 (9th Cir. 2001) .................................................. 27

Plaintiffs' Motion for Final Approval of Proposed Class Action Settlement with
Defendants Baker, Columbia, Jackson, and Marion Counties

*Lott v. Vial Fotheringham, LLP,*
No. 3:16-cv-00419-HZ, 2020 WL 1890539 (D. Or. Apr. 15, 2020) ......................... 23

*Ludlow v. Flowers Foods, Inc.,*
No. 3:18-CV-01190-JO-JLB, 2024 WL 1162049 (S.D. Cal. Mar. 18, 2024)............ 16

*Lynch v. Multnomah Cnty.,*
No. 23-cv-01434, 2024 WL 5238284 (D. Or. Dec. 27, 2024)..................................... 5

*Magallon v. Robert Half Int'l Inc.,*
No. 6:13-CV-1478-SI, 2025 WL 1324248 (D. Or. May 7, 2025) .............................. 19

*Makaneole v. SolarWorld Indus. Am., Inc.,*
No. 3:14-cv-1528-JR, 2022 WL 3357650 (D. Or. May 17, 2022)............................. 20

*Moss v. U.S. Secret Serv.,*
No. 1:06-cv-3045-CL, 2015 WL 5705126 (D. Or. Sept. 28, 2015) .................... 23, 24

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,*
221 F.R.D. 523 (C.D. Cal. 2004)........................................................................ 11, 22

*O'Shea v. Am. Solar Solution, Inc.,*
318 F.R.D. 633 (S.D. Cal. 2017) .............................................................................. 28

*Officers for Just. v. Civ. Serv. Comm'n,*
688 F.2d 615 (9th Cir. 1982) ............................................................................. 11, 19

*Pecover v. Elec. Arts Inc.,*
No. C 08–2820 VRW, 2010 WL 8742757 (N.D. Cal. Dec. 21, 2010) ...................... 24

*Rodriguez v. W. Publ'g Corp.,*
563 F.3d 948 (9th Cir. 2009) ................................................................................... 14

*Schneider v. Chipotle Mexican Grill, Inc.,*
336 F.R.D. 588 (N.D. Cal. 2020) ............................................................... 12, 22, 23

*Staton v. Boeing Co.,*
327 F.3d 938 (9th Cir. 2003) .............................................................................. 13, 14

*Tyler v. Hennepin Cnty.,*
598 U.S. 631 (2023) ................................................................................................ 4, 5

*Tyson Foods, Inc. v. Bouaphakeo,*
577 U.S. 442 (2016) ................................................................................................. 26

*Van v. LLR, Inc.,*
61 F.4th 1053 (9th Cir. 2023)................................................................................... 23

Plaintiffs' Motion for Final Approval of Proposed Class Action Settlement with
Defendants Baker, Columbia, Jackson, and Marion Counties

*Vasquez v. Coast Valley Roofing, Inc.,*
266 F.R.D. 482 (E.D. Cal. 2010) ................................................................................ 16

*Villanueva v. Liberty Acquisitions Servicing, LLC,*
319 F.R.D. 307 (D. Or. 2017) ................................................................................... 23

*Wal-Mart Stores, Inc. v. Dukes,*
564 U.S. 338 (2011) ................................................................................................. 24

*Wang v. Chinese Daily News,*
737 F.3d 538 (9th Cir. 2013) ................................................................................... 24

*White v. Symetra Assigned Benefits Serv. Co.,*
104 F.4th 1182 (9th Cir. 2024) ................................................................................ 23

**Rules**

Fed. R. Civ. P. 23 ............................................................................................. *passim*

## LOCAL RULE 7-1 CERTIFICATION

Defendants consent to the granting of this motion and to the entry of the proposed order. Defendants do not intend for their consent to be construed as an admission to any fact or argument should this settlement not achieve final approval, or to bind any non-settling party.

## MOTION

In accordance with Federal Rule of Civil Procedure Rule 23(e), the following Plaintiffs in these consolidated actions respectfully move this Court for final approval of the proposed class action settlement with the following Defendants:

| Case | Settling Plaintiff(s) and Proposed Class Representative(s) | Settling Defendant |
|---|---|---|
| *Baker v. Baker County*, 2:24-cv-01503-IM | Jerry Baker | Baker County |
| *Gabbert, et al. v. Josephine County, et al.*, 1:23-cv-01434-IM | Michael Langshaw, Dallis Bowman, Melody Gibson, and Michelle Wend | Columbia County |
| | Barbara Newkirk and Michael Newkirk | Jackson County |
| | David Arndt | Marion County |

In support of this motion, Plaintiffs rely on the below Memorandum in Support.[1] As further detailed in the memorandum, Plaintiffs respectfully request that the Court, in an order substantially in the form appended herein as Exhibit 1:

---

[1] Although not all parties to the *Gabbert* action are part of the present settlement, the settling parties are referred to in this memorandum simply as "Plaintiffs" and "Defendants" for ease of reading.

1

1.  approve this Settlement and its terms as being fair, reasonable, and adequate within the meaning of Federal Rule of Civil Procedure 23(e);[2]

2.  certify the Settlement Class for purposes of implementing the proposed Settlement; and

3.  maintain exclusive jurisdiction over the Settlement and the Settlement Agreement, including their interpretation, administration, and consummation.

## MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

### INTRODUCTION

Plaintiffs in these consolidated actions seek damages on behalf of themselves and putative class members whose real property Defendants took through tax-foreclosure proceedings, where Defendants failed to return either sales proceeds that exceeded the tax debt or, for unsold properties, surplus real market value that exceeded the tax debt. Plaintiffs allege that Defendants thereby violated class members' federal and state constitutional rights.

While Plaintiffs are confident in the merits of their claims, and while Defendants believe they have defenses against the claims and class certification, the parties acknowledge the considerable risks, delays, and costs associated with further litigation. Accordingly, the parties have worked diligently to resolve the claims before trial. Following lengthy arm's-length negotiations, including a settlement conference with the Honorable John V. Acosta, Plaintiffs and

---

[2] Capitalized terms are intended to have the definitions ascribed to them in the Settlement Agreement. *See Lynch* ECF 213-1 ¶ 1.

Defendants have reached a proposed class settlement to resolve their claims, the terms of which are set forth in the Settlement Agreement. *See Lynch* ECF 213-1.

This Settlement achieves an exceptional result for the Settlement Class. Under the terms of the agreement, Defendants will collectively pay into a common fund representing *100%* of the Surplus Proceeds that Defendants obtained from selling Class Members' property—plus nine percent interest from the date each property was deeded to a County to the date of Plaintiffs' settlement demand—for a total common fund of at least $4,919,409.99, as set forth in Exhibit 2 to the Settlement Agreement. Any Surplus Proceeds resulting from additional property sales before the Claims Period expires will be added to the common fund. After funds are distributed to cover notice costs, claims administration, Court-approved attorneys' fees and expenses, and service awards to the Class Representatives, each Class Member who submits a valid and timely claim will be eligible for a payment. Depending on the total amount of approved claims, each Class Member who submits a valid and timely claim may receive up to the full amount of the Surplus Proceeds applicable to their Eligible Property, plus interest.

On June 1, 2026, this Court entered an order granting preliminary approval to the Settlement; preliminarily finding that the settlement was fair, reasonable, and adequate; finding that the prerequisites for a class action had been satisfied; and directing that notice be provided to the Settlement Class. *Lynch* ECF 218. In accordance with the Court's order, Kroll Settlement Administration LLC ("Kroll") has implemented the Court-approved notice program, as discussed in greater detail

below and in Exhibit 2, Declaration of Brianne A. Nelson. Kroll will provide another declaration with updated information on the implementation of the notice program after the opt-out and objection deadline of September 14, 2026, has passed.

Plaintiffs now respectfully request that this Court finally approve the proposed Settlement according to the well-established governing standards under Federal Rule of Civil Procedure 23.

### RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A.    The considerable litigation that preceded the Settlement Agreement

Before 2023, many Oregon counties took tax-foreclosed real properties and did not compensate the former owners for any equity they had in the properties. In May 2023, however, the Supreme Court held that such practices violate the Fifth Amendment's Takings Clause, because the government cannot "use the toehold of [a] tax debt to confiscate more property than was due." *Tyler v. Hennepin Cnty.*, 598 U.S. 631, 639 (2023). Plaintiffs allege that Defendants seized Plaintiffs' and the Class Members' properties and unconstitutionally kept the surplus sales proceeds or equity in violation of *Tyler*.

Plaintiffs and Defendants are parties to two consolidated *Tyler*-based actions currently pending before this Court: *Gabbert et al. v. Josephine County, et al.*, No. 1:23-cv-01434-IM, and *Baker v. Baker County*, 2:24-cv-01503-IM. Undersigned counsel filed the initial *Gabbert* class action complaint on October 23, 2023. *Gabbert* ECF 7. The complaint alleged that the defendant counties seized the named plaintiffs' and putative class members' properties, sold them for more than the tax

4

Plaintiffs' Motion for Final Approval of Proposed Class Action Settlement with
Defendants Baker, Columbia, Jackson, and Marion Counties

debt owed (plus associated statutory fees and costs), and unconstitutionally kept the difference, in violation of *Tyler*. A different group of plaintiffs filed a similar complaint against other Oregon counties on October 12, 2023. *See Lynch, et al. v. Multnomah County, et al.*, 3:23-cv-01502-IM, ECF 1. As far as Class Counsel is aware, these were the first two *Tyler*-based class actions filed in Oregon.

On January 19, 2024, all defendants moved to dismiss the complaint. *Gabbert* ECF 31. All plaintiffs responded to that motion. *Gabbert* ECF 35. Shortly thereafter, a group of non-party counties moved to intervene as defendants, and the plaintiffs responded to that motion as well. *Gabbert* ECF 37, 41. After the motion to dismiss was fully briefed, the defendants made multiple supplemental submissions in support of their motion, to which the plaintiffs responded. *Gabbert* ECF 50, 51, 60–65. The defendants also sought to consolidate the *Gabbert* case with two other class actions involving *Tyler* claims: *Lynch* and *Sawyer, et al. v. Marion County, et al.*, 3:23-cv-01971-IM; the plaintiffs opposed that motion. *Gabbert* ECF 38, 40.

On September 7, 2024, undersigned counsel filed the *Baker* class action complaint. *Baker* ECF 1. Similar to the *Gabbert* complaint, this complaint alleged that Baker County seized Plaintiff Baker's and putative class members' properties and unconstitutionally kept the surplus sale proceeds, in violation of *Tyler*.

In December 2024, this Court rejected the *Gabbert* (and *Lynch* and *Sawyer*) defendants' motion-to-dismiss arguments on the merits, holding that the plaintiffs had stated valid federal and state claims. *See Lynch v. Multnomah Cnty.*, No. 23-cv-01502, 2024 WL 5238284, at *7 (D. Or. Dec. 27, 2024) (*Gabbert* ECF 71). The Court

Plaintiffs' Motion for Final Approval of Proposed Class Action Settlement with
Defendants Baker, Columbia, Jackson, and Marion Counties

did, however, dismiss some of the claims as untimely. *Id.* at \*13–14, 17. It also denied the motions to intervene and consolidate. *Id.* at \*19.

The *Gabbert* plaintiffs filed an amended complaint. *Gabbert* ECF 72. Meanwhile, Baker County moved to dismiss the *Baker* action, to which Plaintiff Baker responded. *Baker* ECF 8, 10. On May 21, 2025, this Court denied that motion on the merits, while holding that Plaintiff Baker could pursue only his state constitutional claims because his federal claims were time-barred. *Baker* ECF 16.

The Court then granted the plaintiffs' motion to consolidate the *Gabbert*, *Baker*, *Lynch*, and *Sawyer* cases, with *Lynch* as the lead case. *Lynch* ECF 145.

Discovery ensued in the consolidated actions. Defendants disclosed numerous spreadsheets and thousands of pages of underlying records related to the tax-foreclosures of the putative class members' properties. *See* Exhibit 3, Declaration of Akeeb Dami Animashaun ¶ 4.

On September 26, 2025, the *Gabbert* defendants again moved to dismiss. *Lynch* ECF 164. The *Gabbert* plaintiffs responded on October 17, 2025. *Gabbert* ECF 120. In November, the *Gabbert* defendants moved to quash certain discovery demands and subpoenas on third-party counties. *Lynch* ECF 182. The *Gabbert* plaintiffs opposed. *Lynch* ECF 186. The Court ordered supplemental briefing. *Lynch* ECF 188.

However, on January 2, 2026, the Court held all pending motions in abeyance upon the joint motion of the *Gabbert* and *Baker* parties, who had begun settlement discussions. *Lynch* ECF 191. On February 23, 2026, the parties attended a daylong

Plaintiffs' Motion for Final Approval of Proposed Class Action Settlement with
Defendants Baker, Columbia, Jackson, and Marion Counties

settlement conference before Magistrate Judge John V. Acosta; they made substantial progress but did not reach a final resolution. *See Lynch* ECF 202; Ex. 3 ¶ 10. In the following seven weeks, the parties worked diligently to resolve all remaining issues, speaking numerous additional times, both directly and through Judge Acosta as an intermediary. *Id.* ¶ 11. Finally, on April 14, 2026, the parties signed the Settlement Agreement. *Id.* ¶ 12.

## B.    Terms of the Settlement Agreement

The Settlement Agreement defines the proposed Settlement Class as:

> All persons and entities—and their heirs, successors, and assignees as defined under "Potential Claimants"—who held an ownership interest in, or a valid lien on, real property that Defendants obtained through a foreclosure action to satisfy unpaid real estate taxes or other County or local government taxes, fees, or penalties and whose redemption period expired during the Class Period, as identified in the schedule attached as Exhibit 1, and which the Counties (1) sold for an amount exceeding the unpaid taxes, fees, and other costs associated with that property; or (2) donated, transferred, or retained, where the real market value at the time title transferred to the County exceeded the amount of unpaid taxes, fees, and other associated costs.

*See Lynch* ECF 213-1 ¶ 2.

The Settlement is a common-fund settlement. It provides that Defendants collectively will pay into the Settlement Fund, in consideration of a release of claims in this litigation, (a) $4,919,409.99, representing Surplus Proceeds from the sales of tax-foreclosed properties, and (b) any additional Surplus Proceeds that Defendants may obtain should they sell additional tax-foreclosed properties before the end of the Claims Period. *Id.* ¶ 4.2. This represents 100% of the Surplus Proceeds obtained

Plaintiffs' Motion for Final Approval of Proposed Class Action Settlement with
Defendants Baker, Columbia, Jackson, and Marion Counties

from Eligible Properties that Defendants have sold or will sell during the Claims Period, plus nine percent interest.

The Settlement Agreement further provides that, for properties Defendants do not sell, they (a) may dispose of properties with assessed values of less than $15,000 by adding that assessed value, minus deductible costs, to the Settlement Fund, *id.* ¶ 4.4, or otherwise (b) must continue to try to sell such properties and make available to the former owner any eventual Surplus Proceeds, *id.* ¶ 4.5. The Settlement Fund currently totals $4,933,112.99, because Baker County elected to add $13,703.00, the assessed value of a sub-$15,000 property, to the Settlement Fund.

For a small subset of unsold low-value properties—those in Columbia County with an assessed value of $1,100 or less—Columbia County has the option of disposing of such properties by paying a total of $3,000 to the former property owner either directly or through the State Treasury for pro-rata distribution, as unclaimed property, to the former owners. *See id.*

The agreement provides that the Settlement Fund shall be distributed to cover costs of notice and claims administration, not to exceed $250,000, *id.* ¶¶ 5.1.1–5.1.2; then Court-approved attorneys' fees, litigation costs, and expenses, and service awards to the Class Representatives, *id.* ¶ 5.1.3; after which each Class Member who submits a valid and timely claim will be eligible for a payment equaling up to the full amount of the Surplus Proceeds associated with that Class Member's Eligible Property, plus accrued interest, *id.* ¶ 5.1.4. In the event the total

amount of approved claims exceeds the amount available for distribution from the Settlement Fund, all approved claims will be reduced pro rata. *Id.*

Class Members have 180 days after preliminary approval of the Settlement to submit a completed Claim Form to the Claims Administrator. *Id.* ¶ 7.8. Since this Court granted preliminary approval on June 1, 2026, that deadline is November 30, 2026. The Claim Form will require each claimant to provide sufficient information for the Claims Administrator and the parties to assess whether the claimant is a Class Member. *Id.* ¶ 7.7. Further, for claimed unrecorded interests in an Eligible Property, the claimant will be required to submit an affidavit or declaration setting forth all the factual and legal bases for the asserted interest. *Id.* ¶ 7.10. There is a similar requirement for claims based on adverse possession. *Id.*

The Claims Administrator will determine which Claims are Eligible Claims, with assistance from the Parties as necessary. *Id.* Payments will then be made to Eligible Claimants from the Settlement Fund. *Id.* ¶ 5.1.4. If there are competing Eligible Claims associated with one property, and the dispute cannot be resolved by the Claimants and/or the Claims Administrator, Eligible Claimants can request that the Court or a Special Master determine the allocation of proceeds. *Id.* ¶¶ 7.11, 10.2. The costs associated with the Special Master would be paid out of the Settlement Fund. *Id.* ¶ 10.2.

Under the Settlement Agreement, Class Counsel will file a motion with this Court for a fee award not to exceed 25% of the Settlement Fund. *Id.* ¶ 8.1. That motion is being filed concurrently with the present motion.

Any remaining amount in the Settlement Fund after the above-described disbursements have been made will be used first to reimburse Defendants for any payments of Surplus Proceeds they make to Class Members who request exclusion ("opt-outs") and are paid before the end of the Claims Period. *Id.* ¶ 5.1.5.

After that, from any funds still remaining, one-half of the interest associated with any unclaimed Surplus Proceeds will be distributed pro rata to Defendants. *Id.* ¶ 5.1.6. This is demonstrated by example in Exhibit 2 to the Settlement Agreement. *See Lynch* ECF 213-1 at 42.[3]

Finally, any remaining funds will be distributed, in accordance with the cy pres doctrine, to Defendants' housing authorities or other nonprofit organizations operating within the counties for housing placement and support services, rental assistance, and/or the development of new affordable housing. *Id.* ¶ 5.1.7.

## C.    The order preliminarily approving the Settlement and the commencement of the notice procedures

On June 1, 2026, this Court entered an order granting preliminary approval to the Settlement; preliminarily finding that the settlement was fair, reasonable, and adequate; finding that the prerequisites for a class action had been satisfied; and directing that notice be provided to the Settlement Class. *Lynch* ECF 218.

In accordance with the Court's order, Kroll has implemented the court-approved notice program. Kroll has mailed 662 notices and emailed 324 notices to a total of 678 potential Class Members, issued a press release over PR Newswire's

---

[3] All ECF pincites refer to the ECF page numbers stamped at the *top* of the filed document.

Plaintiffs' Motion for Final Approval of Proposed Class Action Settlement with
Defendants Baker, Columbia, Jackson, and Marion Counties

Oregon newsline, and published the Summary Notice in the print version of *The Oregonian*. Ex. 2 ¶¶ 4, 9, 12–15. Kroll commenced an online ad campaign on July 16, 2026, that was substantially completed on August 1, 2026. *Id.* ¶ 13.

To date, no objections or requests for exclusion have been received. *Id.* ¶ 17. Kroll will provide another declaration to the Court with further updated information on the implementation of the notice program after the online ad campaign is completed and the opt-out and objection deadline of September 14, 2026, has passed.

A final approval hearing is scheduled for September 17, 2026, at 3:00 p.m. *Lynch* ECF 218 at 7.

## ARGUMENT

**The Court should approve the Settlement as fair, adequate, and reasonable; deem the notice provided to Class Members adequate; and certify the Settlement Class.**

### A.    General principles governing final approval of a class action settlement

A "strong judicial policy . . . favors settlements, particularly where complex class action litigation is concerned." *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015) (internal quotation marks omitted); *accord Officers for Just. v. Civ. Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). Federal Rule of Civil Procedure 23(e) requires "the court's approval" of such settlements. After preliminary approval is granted, the court next must determine, "after notice is given to class members, whether final approval is warranted." *Carlin v. DairyAmerica, Inc.*, 380 F. Supp. 3d 998, 1008 (E.D. Cal. 2019) (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,

11

221 F.R.D. 523, 525 (C.D. Cal. 2004)); *see* Fed. R. Civ. P 23(e)(1), (2). "At the final approval stage, the primary inquiry is whether the proposed settlement is 'fair, adequate, and free from collusion.'" *Carlin*, 380 F. Supp. 3d at 1008 (quoting *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012)). "Although district courts are required to give substantive consideration to the terms of a proposed settlement, they are not bound by any duty to maximize the settlement fund for class members." *In re California Pizza Kitchen Data Breach Litig.*, 129 F.4th 667, 674 (9th Cir. 2025) (citation and internal quotation marks omitted).

Additionally, "[f]inal approval of a class action settlement requires, as a threshold matter, an assessment of whether the class satisfies the requirements of Federal Rule of Civil Procedure 23(a) and (b)." *Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 595 (N.D. Cal. 2020) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019–1022 (9th Cir. 1998)).

Finally, "'[a]dequate notice is critical to court approval of a class settlement under Rule 23(e).'" *Id.* (quoting *Hanlon*, 150 F.3d at 1025).

## B.    The proposed Settlement is fair, adequate, and reasonable.

### 1.    Governing legal standards

"Before 2018, th[e Ninth Circuit] instructed courts engaging in Rule 23(e)'s 'fair, reasonable, and adequate' analysis to consider the following non-exhaustive list of factors:'"

> [1] the strength of plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed, and the stage of the

12

proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement.

*California Pizza Kitchen*, 129 F.4th at 674 (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003)). These are the so-called *Hanlon, Staton*, or *Churchill* factors. *See California Pizza Kitchen*, 129 F.4th at 674.

"In 2018, Rule 23(e) was amended to prescribe its own multi-factor test," *id.*, which asks whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
> > (i) the costs, risks, and delay of trial and appeal;
> >
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> >
> > (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> >
> > (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). "The key *Hanlon* factors are now baked into the text of Rule 23(e), and the remaining ones can still be considered for Rule 23(e)(2) analysis." *California Pizza Kitchen*, 129 F.4th at 674. The analysis below follows the framework of the prescribed Rule 23(e)(2) factors, while addressing the *Hanlon* factors within that framework.

"Ultimately, 'the decision to approve or reject a settlement is committed to the sound discretion of the trial judge because [she] is exposed to the litigants and their strategies, positions, and proof.'" *Carlin*, 380 F. Supp. 3d at 1009 (quoting *Staton*, 327 F.3d at 953).

### 2.    Class Counsel and the class representatives have adequately represented the class (Rule 23(e)(2)(A)).

"To determine whether class counsel and class representatives have adequately represented the class, courts consider the competence of counsel and the class representatives' participation in prosecuting the case." *Kelly v. Aramark Servs., Inc.*, 815 F. Supp. 3d 1043, 1051 (N.D. Cal. 2025) (citing *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009); and *In re Google LLC St. View Elec. Commc'ns Litig.*, 611 F. Supp. 3d 872, 890 (N.D. Cal. 2020)). When assessing Rule 23(a)(4)'s adequacy requirement, which is essentially identical to Rule 23(e)(2)(A)'s adequacy requirement, courts ask "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982)). This requirement also can be analyzed "in part by considering the 'competency and conflicts of class counsel.'" *Kelly*, 815 F. Supp. 3d at 1050 (quoting *Amchem Prods., Inc.*, 521 U.S. 591 at 626 n.20). The Court thus should ask: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action

vigorously on behalf of the class?" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (quoting *Hanlon*, 150 F.3d at 1020).

Here, all parties' interests have been aligned in obtaining the greatest possible recovery against Defendants. There are no conflicts between the Class Representatives or Class Counsel, on the one hand, and the Class Members on the other. Moreover, Class Counsel are experienced class action and civil rights litigators who have capably and zealously represented the class. *See* Ex. 3 ¶¶ 2–15. The adequacy requirement is satisfied. The sixth *Hanlon* factor—"experience and views of counsel"—is satisfied for similar reasons.

### 3. The proposed Settlement was negotiated at arm's length (Rule 23(e)(2)(B)).

"Where, as here, an agreement is the product of 'serious, informed, non-collusive negotiations' conducted by experienced counsel over an 'extended period of time,' those facts will weigh in favor of approval." *Cmty. Res. for Indep. Living v. Mobility Works of California, LLC*, 533 F.Supp.3d 881, 889 (N.D. Cal. 2020) (quoting *In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1079–80 (N.D. Cal. 2007)). If courts observe any of "three subtle signs" of possible collusion (discussed below), they must apply a "higher level of scrutiny" to the proposed settlement, but the presence of such factors does not "make[] a settlement per se collusive." *California Pizza Kitchen*, 129 F.4th at 674, 677 (internal quotation marks omitted).

Here, the Settlement resulted from serious, informed, non-collusive negotiations conducted over several months, including a settlement conference and follow-up discussions with Magistrate Judge Acosta generously acting as

15

intermediary. *See* Ex. 3 ¶¶ 10–13. None of the signs of possible collusion or fraud that the Ninth Circuit has warned of are present. First, Class Counsel will not receive a "disproportionately large fee award compared to what the class members received." *California Pizza Kitchen*, 129 F.4th at 675. Class Counsel seeks attorneys' fees constituting 25% of the Settlement Fund, and "[t]wenty-five percent of a common fund is the benchmark under the percentage-of-recovery method for assessing attorney's fees" in class actions. *Kelly*, 815 F. Supp. 3d at 1052; *accord California Pizza Kitchen*, 129 F.4th at 679; *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). Indeed, "in most common fund cases, the award exceeds that benchmark." *Ludlow v. Flowers Foods, Inc.*, No. 3:18-CV-01190-JO-JLB, 2024 WL 1162049, at *8 (S.D. Cal. Mar. 18, 2024) (quoting *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D. Cal. 2010)).

Second, there is no "clear sailing" provision of the type the Ninth Circuit has found to require special scrutiny. Although the Settlement Agreement provides that Defendants will not object to Plaintiffs' fee motion, the Ninth Circuit's concern is with an agreement "in which payment of attorneys' fees is '*separate and apart from class funds*, [carrying] the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class.'" *Kelly*, 815 F. Supp. 3d at 1052–53 (emphasis added) (quoting *Bluetooth*, 654 F.3d at 947). Here, by contrast, "the fees will come from the settlement fund and settlement class members have standing to object to the award of fees if they believe it excessive." *Id.* at 1052. In any event, "[t]he concern with a

16

'clear sailing' arrangement is that class counsel may have obtained too little for the class 'in exchange for red-carpet treatment on fees,'" *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1127 (9th Cir. 2020) (quoting *Bluetooth*, 654 F.3d at 947), and here, "the Settlement itself does not suggest that Class Counsel sacrificed value on behalf of the Class in exchange for 'red-carpet treatment' on fees," *Brinkmann v. ABM Onsite Servs. – W., Inc.*, No. 3:17-CV-275-SI, 2021 WL 3932040, at *15 (D. Or. Sept. 2, 2021). To the contrary, Class Counsel has secured a settlement fund representing 100% of the Surplus Proceeds that Defendants obtained from selling tax-foreclosed properties and is asking for no more than the standard 25% benchmark for fees.

Finally, there is no "'kicker' or 'reverter' clause providing that unawarded attorney's fees be returned to the defendant, rather than the class." *Kelly*, 815 F. Supp. 3d at 1052 (quoting *Briseño v. Henderson*, 998 F.3d 1014, 1023 (9th Cir 2021)); *see California Pizza Kitchen*, 129 F.4th at 676 ("The reverter provision flagged in *Bluetooth* addresses what happens to unawarded attorneys' fees."). Here, any fees will be awarded from the Settlement Fund; any fees not awarded will remain in the Settlement Fund. The agreement does provide that, at the penultimate stage of fund distribution, *if* any funds are left after all valid claims have been paid, Defendants will receive a minimal distribution of funds equivalent to one-half of the interest associated with unclaimed Surplus Proceeds. *See Lynch* ECF 213-1 ¶ 5.1.6.[4] But that is not a reversion of unawarded attorneys' fees, and in

---

[4] For example, Josphine County contributed $2,171,480.17 to the Settlement Fund. *See* ECF 213-1 at 42. Of this total, only $773,484.24 was designated Surplus Interest. Thus, if no other distributions were made, the maximum that could revert

17

any event, "there is no evidence that the reversion is the product of collusion." *Bell v. Consumer Cellular, Inc.*, No. 3:15-cv-941-SI, 2017 WL 2672073, at \*8 (D. Or. June 21, 2017). This modest allowance (if there is any after the claims period) recognizes that the Settlement Fund comes from local government coffers and that any money returned will be used to fund government services for the public. This approach is consistent with case law holding that "the presence of a governmental participant"—*Hanlon* factor number seven—"generally weighs in favor of approving the settlement," presumably because governments are assumed to act in the public interest. *Dunsmore v. San Diego Cnty. Sheriff's Dep't*, No. 20-CV-00406-AJB-DDL, 2025 WL 2210186, at \*5 (S.D. Cal. Aug. 4, 2025) (quoting *Fitzgerald v. Pollard*, No. 20CV848 JM(MSB), 2024 WL 4596401, at \*7 (S.D. Cal. Oct. 28, 2024)); *accord Lane v. Brown*, 166 F. Supp. 3d 1180, 1191 (D. Or. 2016).

**4.      The relief provided for the class is adequate (Rule 23(e)(2)(C)).**

Rule 23(e)(2)(C)'s concern with the relief provided to the class and "the costs, risk, and delay of trial and appeal," *id.* 23(e)(2)(C)(i), overlaps with the first five *Hanlon* factors: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; and the extent of discovery completed and stage of the proceedings. These factors favor approval here.

---

to Josephine County is $386,742.12, one-half of the Surplus Interest, and less than 18 percent of its total contribution to the Settlement Fund.

Plaintiffs' Motion for Final Approval of Proposed Class Action Settlement with
Defendants Baker, Columbia, Jackson, and Marion Counties

This Settlement essentially achieves the very result—now—that Plaintiffs would seek later at trial: 100% of the Surplus Proceeds that Class Members are owed, plus interest. Even "a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair," *Brinkmann*, 2021 WL 3932040, at *11 (quoting *Officers for Just.*, 688 F.2d at 628), and here, the settlement amounts to *all* the potential recovery. Continuing to litigate this case would needlessly continue to expose Plaintiffs to the "inherent risks and uncertainty" that are part of all litigation, even when the plaintiff has a strong case. *Magallon v. Robert Half Int'l Inc.*, No. 6:13-CV-1478-SI, 2025 WL 1324248, at *3 (D. Or. May 7, 2025). It also would "involv[e] a significant expenditure of resources by the parties and the Court." *Id.* The parties would have to finish discovery, including numerous depositions; brief complicated, time-consuming class-certification and summary-judgment motions; and conduct a jury trial. After that, the case could be further delayed by "post-trial motions and appeal, involving additional hurdles and litigation that would be expensive and time-consuming." *Id.* In short, "given the parties' uncertainty of the outcome and the complexity of this case, these litigation strategy factors favor approval of the Settlement Agreement." *Id.*

The other factors set forth in Rule 23(e)(2)(C) also favor approval. The "proposed method of distributing relief to the class" is "effective[]." Fed. R. Civ. P. 23(e)(2)(C)(ii). "All class members can be identified, and the Notice of Settlement will be . . . mailed directly to each class member using First-Class U.S. Mail." *Kelly*,

815 F. Supp. 3d at 1054. The Court previously appointed a proven claims administrator, Kroll Settlement Administrator, *Lynch* ECF 218 at 4, and claims administration is under way without any problems, *see* Exhibit 3.

As discussed above and in Class Counsel's fee motion, which is being filed concurrently with the present motion, "the terms of any proposed award of attorney's fees" are reasonable. Fed. R. Civ. P. 23(e)(2)(C)(iii). So is "timing of payment." *Id.* Fees will not be paid until after the Effective Date of this Settlement, *Lynch* ECF 213-1 ¶ 5.1.3, meaning after the Court has granted final approval and such approval is no longer appealable, *id.* ¶ 1.19, and failure of the Court to approve attorneys' fees will not affect the operation of the other settlement terms, *id.* ¶ 8.3.

Finally, with respect to "any agreement required to be identified under Rule 23(e)(3)," Fed. R. Civ. P. 23(e)(2)(C)(iv), there are no agreements between Plaintiffs and Defendants other than the Settlement Agreement.

### 5. The Settlement treats Class Members equitably relative to each other (Rule 23(e)(2)(D)).

The Settlement Agreement "does not improperly grant preferential treatment to class representatives or segments of the class." *Makaneole v. SolarWorld Indus. Am., Inc.*, No. 3:14-cv-1528-JR, 2022 WL 3357650, at *3 (D. Or. May 17, 2022) (quoting *In re Tableware*, 484 F. Supp. 2d at 1079), *report and recommendation adopted*, No. 3:14-cv-01528-JR, 2022 WL 1910258 (D. Or. June 3, 2022). Rather, the method of distribution is designed to compensate all Class Members based on the full surplus sale proceeds to which they are entitled under *Tyler*. Class Members whose properties Defendants have not sold and cannot sell before the Claims Period

20

ends will not receive payment from the Settlement Fund, but the Settlement Agreement binds Defendants to pay such Class Members any Surplus Proceeds generated if the County later sells the properties. For a small number of former owners of very low-value properties in Columbia County that are unlikely to sell, they will still be entitled to a pro-rata share of $3,000 paid by Columbia County. There is no inequitable treatment of Class Members.

Nor are the Class Representatives favored or treated differently; rather, they will be entitled, just like the Class Members, to the Surplus Proceeds associated with the properties taken from them. While Plaintiffs, in the concurrently filed fee motion, move for a reasonable award for the Class Representatives for their service to the Class, the requested award of $10,000 is reasonable in relation to the average Class Member's recovery and is not be conditioned on the Class Representatives' support for the Settlement. As discussed in the fee motion, such service awards are routinely approved. *See e.g., Granados v. OnPoint Cmty. Credit Union*, No. 3:21-cv-847-SI, 2025 WL 1640204, at *9 (D. Or. June 10, 2025) (noting that the adequacy of class representatives may be undermined by "incentive awards that are contingent on the named representatives approving class settlement . . . or by disproportionately large incentive awards," but finding an award of $10,000 reasonable); *Chehalem Physical Therapy v. Coventry Health Care, Inc.*, No. 3:09-cv-00320-HU, 2014 WL 4373150, at *4 (D. Or. Sept. 3, 2014) (awarding $10,000 service awards while granting final approval to class action settlement).

21

6.      **The presence of governmental participants favors approval.**

As noted above, "the presence of a governmental participant in the class action generally weighs in favor of approving the settlement." *Dunsmore*, 2025 WL 2210186, at *5 (quoting *Fitzgerald*, 2024 WL 4596401, at *7); *accord Lane*, 166 F. Supp. 3d at 1191. Here, Defendants are all governmental actors, which further favors final approval of this settlement.

7.      **The reaction of Class Members favors approval.**

The Court-approved Class Notice has been published and disseminated, and so far no Class Member has objected to the Settlement or opted out. While the objection and opt-out deadline of September 14, 2026, has not yet arrived, the lack of objections and opt-outs so far indicates that Class Members largely support the settlement. *See Schneider*, 336 F.R.D. at 598–99 ("[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." (quoting *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 528–29)); *accord In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 320–21 (N.D. Cal. 2018).

Plaintiffs will of course update the court if they receive any timely objections or opt-outs before the September 14, 2026, deadline.

C.      **The notice provided to Class Members is adequate.**

"[T]he notice plan previously approved by the Court was implemented"; "the notice thus satisfied" the requirements of Rule 23. *Schneider*, 336 F.R.D. at 596 (N.D. Cal. 2020).

Plaintiffs' Motion for Final Approval of Proposed Class Action Settlement with
Defendants Baker, Columbia, Jackson, and Marion Counties

**D.    The proposed Settlement satisfies the standards for certifying a class under Rules 23(a) and (b).**

"Under Rule 23, a class action may be maintained if the four prerequisites of Rule 23(a) are met, and the action meets one of the three kinds of actions listed in Rule 23(b)." *White v. Symetra Assigned Benefits Serv. Co.*, 104 F.4th 1182, 1191 (9th Cir. 2024) (quoting *Van v. LLR, Inc.*, 61 F.4th 1053, 1062 (9th Cir. 2023)). This Court has preliminarily certified the proposed Settlement Class. *Lynch* ECF 219, at 2–3. "Because no facts that would affect these requirements have changed since the Court preliminarily approved the settlement," this Court may "incorporate[] by reference its prior analysis as set forth in the order granting preliminary approval," and deem these requirements satisfied. *Schneider*, 336 F.R.D. at 595 (N.D. Cal. 2020); *accord Carlin*, 380 F. Supp. 3d at 1008. Nevertheless, to be complete, Plaintiffs below reiterate that the Rule 23(a) and (b) requirements have been meet.

**1.    The class is so numerous that joinder of all members is impracticable (Fed. R. Civ. P. 23(a)(1)).**

While "Plaintiffs need not provide an exact number of class members" to show numerosity, *Moss v. U.S. Secret Serv.*, No. 1:06-cv-3045-CL, 2015 WL 5705126, at *3 (D. Or. Sept. 28, 2015), "approximately forty members is sufficient," *Villanueva v. Liberty Acquisitions Servicing, LLC*, 319 F.R.D. 307, 314 (D. Or. 2017) (citation omitted); *accord, e.g.*, *Lott v. Vial Fotheringham, LLP*, No. 3:16-cv-00419-HZ, 2020 WL 1890539, at *2 (D. Or. Apr. 15, 2020).

Here, as shown in Exhibit 1 to the Settlement Agreement, the Settlement covers approximately 103 properties that Defendants have sold and 52 properties

that they have not yet sold. Moreover, many of the properties have more than one

interest holder and therefore more than one associated Class Member. Class Notice

has gone out to more than 600 Potential Class Members. Ex. 2 ¶ 9. This Settlement

easily meets the numerosity requirement.

> **2.    There are questions of law or fact common to the class (Fed. R. Civ. P. 23(a)(2)).**

The commonality requirement is "construed permissively," *Ellis*, 657 F.3d at

981; *Moss*, 2015 WL 5705126, at *3, making commonality "a low hurdle easily

surmounted," *Pecover v. Elec. Arts Inc.*, No. C 08–2820 VRW, 2010 WL 8742757, at

*13 (N.D. Cal. Dec. 21, 2010). "Plaintiffs need not show that every question in the

case, or even a preponderance of questions, is capable of classwide resolution."

*Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014) (quoting *Wang v.*

*Chinese Daily News*, 737 F.3d 538, 544 (9th Cir. 2013)). "[E]ven a single common

question will do," *id.* (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359

(2011)), so long as that question is "apt to drive the resolution of the litigation," *id.*

(quoting *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013)).

Here, several questions of fact and law are common to the class and apt to

drive the litigation—namely:

- whether each of the Defendants had a policy or practice of seizing properties to satisfy unpaid property tax debts and failing to justly compensate the former owners for the surplus sales proceeds from those properties or surplus market value of those properties;

- whether such a policy or practice violates the United States Constitution's prohibition on the government's taking of property without paying just compensation; and

24

- whether such a policy or practice violates the similar protections of the Oregon Constitution.

Resolution of these common issues would resolve the claims of the entire class "in one stroke." *Hurst v. First Student, Inc.*, No 3:15-cv-00021-HZ, 2015 WL 6437196, at *3 (D. Or. Oct. 22, 2015) (quoting *Jimenez*, 765 F.3d at 1165). The commonality requirement is satisfied.

### 3.    The claims or defenses of the representative parties are typical of the claims or defenses of the class (Fed. R. Civ. P. 23(a)(3)).

"The test of typicality 'is whether other members have the same or similar injury [as the class representatives], whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Ellis*, 657 F.3d at 984 (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). Put differently, "[t]ypicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Id.* (quoting *Hanon*, 976 F.2d at 508).

Here, the Class Representatives and Class Members all allege they are victims of the same course of conduct and suffered the same type of injury. Each of them owned an interest in Oregon real property, an Oregon county foreclosed on the property for nonpayment of taxes and took title to it, and the county then retained any surplus equity in that property without justly compensating the former owner. The typicality requirement is satisfied.

**4.    The representative parties will fairly and adequately protect the interests of the class (Fed. R. Civ. P. 23(a)(4)).**

"The adequacy-of-representation requirement 'tend[s] to merge' with the commonality and typicality criteria," since those requirements indicate "'whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Amchem Prods.*, 521 U.S. at 626 n.20 (quoting *Gen. Tel. Co. of Sw.*, 457 U.S. at 157). Other considerations relevant to this factor are discussed in Section B.2, above. The adequacy requirement is satisfied.

**5.    The proposed class satisfies the requirements of Rule 23(b)(3).**

Once the requirements of Rule 23(a) are satisfied, "[a] class action may be maintained if . . . the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b), (b)(3). Plaintiffs have made these showings.

"Predominance is established where a proposed class is 'sufficiently cohesive to warrant adjudication by representation.'" *Kelly*, 815 F. Supp. 3d at 1050–51 (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)). This inquiry "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc.*, 577 U.S. at 453 (internal quotation marks omitted).

26

Here, common, aggregation-enabling questions of fact and law predominate over any individualized issues. As discussed above, the primary legal question in these actions is whether Defendants committed unconstitutional takings by failing to justly compensate Class Members after tax foreclosures. Resolving that issue for the Class Representatives resolves it for all Class Members, as they all suffered property losses due to the same course of conduct by the defendant counties. The only individualized issues are factual questions of how much surplus equity each Class Member lost, and who the owners of the subject properties are (for example, because owners might have died intestate). Those determinations are based on publicly available property and judicial records, as well as Defendants' own records memorializing ownership, assessed property values, taxes and fees owed, sales prices, and deductible maintenance costs. Indeed, each of the Defendants already has performed the relevant calculations to determine the Surplus Proceeds or surplus market value associated with each property. *See Kelly*, 815 F. Supp. 3d at 1051 ("That class members' individual damages may partially rely on individualized evidence does not destroy predominance." (citing *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 513 (9th Cir. 2013)). Plaintiffs have shown predominance.

Plaintiffs also have shown superiority. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Loc. Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th

27

Cir. 2001) (quoting *Hanlon*, 150 F.3d at 1022); *see also Fosbre v. Las Vegas Sands Corp.*, No. 2:10-cv-00765-APG-GWF, 2015 WL 3722496, at *5 (D. Nev. June 15, 2015) ("It is preferable to determine these common questions once, rather than a multitude of times (or not at all if the small value of individual recoveries would deter any single plaintiff from bringing suit)."). Additionally, "[a] class action is generally superior if it will greatly reduce litigation costs." *O'Shea v. Am. Solar Solution, Inc.*, 318 F.R.D. 633, 639 (S.D. Cal. 2017).

The superiority requirement is satisfied here because, as discussed above, there are significant common issues that can be most efficiently resolved on a class-wide basis, thereby greatly reducing litigation costs. Moreover, the specific "pertinent" factors set forth in Rule 23(b)(3) weigh in favor of class certification here: "there is no indication that class members seek to individually control their cases, . . . that this forum is undesirable, or that it would be difficult to manage this case as a class action." *Kelly*, 815 F. Supp. 3d at 1051. As for other litigation "concerning the controversy," Fed. R. Civ. P. 23(b)(3)(B), there are similar actions against other counties, but counsel is aware of no other pending class action against the present Defendants or of any significant number of pending individual actions by putative Class Members. The superiority requirement is satisfied.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an Order in the form submitted herewith and agreed to by the settling parties granting final approval to the Settlement.

Plaintiffs' Motion for Final Approval of Proposed Class Action Settlement with
Defendants Baker, Columbia, Jackson, and Marion Counties

Dated: August 3, 2026

Respectfully submitted,

/s/ Michael Zhang                              /s/ Akeeb Dami Animashaun
Michael Zhang                                  Akeeb Dami Animashaun
Qiu-Qiu Law                                    355 S. Grand Ave., Suite 2450
5020 Martin Luther King Jr. Blvd.,             Los Angeles, California 90071
Suite S                                        dami@animashaun.me
Portland, Oregon 97211                         929-266-3971
michael@qiu-qiulaw.com
908-938-6683

Shakeer Rahman                                 Jacob Loup
Law Office of Shakeer Rahman                   Law Office of Jacob Loup
3435 Wilshire Blvd., Suite 2910                400 Corporate Pointe, Suite 300
Los Angeles, California 90010                  Culver City, California 90230
shakeer@loosr.net                              jl@louplaw.com
323-546-9236                                   347-391-5009

*Counsel for Plaintiffs and the Class*

29

Plaintiffs' Motion for Final Approval of Proposed Class Action Settlement with
Defendants Baker, Columbia, Jackson, and Marion Counties